David FARRELL and Oliver J. Farrell, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18241.

United States Court of Appeals Ninth Circuit.

Aug. 7, 1963.

Rehearing Denied Sept. 17, 1963.

James A. Poore and Robert G. Clinnin, Los Angeles, Cal., for appellant David Farrell.

Gould & Aronson and Paul Augustine, Jr., Los Angeles, Cal., for appellant Oliver J. Farrell.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, Edward M. Medvene, Sp. Asst. to U. S. Atty., and J. Brin Schulman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before JERTBERG and BROWNING, Circuit Judges and BURKE, District Judge.

JERTBERG, Circuit Judge.

Following trial to a jury, the appellants David Farrell and Oliver J. Farrell brothers, were convicted on thirty-two counts of a thirty-four count indictment. Upon the close of the government's case, the District Court dismissed Counts 3 and 33 on motion of the government.

Counts 1, 2, and 4 through 17, inclusive, [16 counts] charge offenses under Section 17(a) (1) of the Securities Act of 1933 (15 U.S.C. § 77q(a) (1)), which in pertinent part provides:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme or artifice to defraud * * *"

Counts 18 through 32, inclusive, [16 counts] charge offenses under the Mail

Fraud Statute (18 U.S.C. § 1341), which in pertinent part provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

Count 34 charges a conspiracy to violate the Securities Act and the Mail Fraud Statute in violation of 18 U.S.C. § 371, which in pertinent part provides:

"If two or more persons conspire either to commit any offense against the United States, * * * and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. * * *"

The first count alleges that appellants and one Stanley C. Marks [acquitted by jury verdict on all counts], devised a scheme to defraud investors in the sale of securities [investment contracts, promissory notes, and evidence of indebtedness] issued by Trust Deed Mortgage Exchange (TD&ME), a California corporation, Los Angeles Trust Deed and Mortgage Exchange (LATD&ME), a California corporation, Trust Deed and Mortgage Markets (TD&MM) a California corporation, and Colorado Trust Deed and Mortgage Markets (CTD&MM), a Colorado corporation, in connection with an investment plan or program designated by appellants as a secured 10%

earnings program, secured 10% earnings reinvestment program and secured 10% earning accounts, based on the sale to investors of discounted trust deeds and mortgages covering units of real estate situated within the State of California. The first count describes the scheme to defraud, in detail.

Counts 2, and 4 to 17 inclusive, allege a separate violation of the quoted section of the Securities Act and incorporate by reference the allegations made in Count 1.

Counts 18 to 32, inclusive, incorporate the statement of the scheme to defraud as set forth in Count 1, except that the instruments through which the scheme was accomplished are not described as securities.

The 34th Count alleges and incorporates by reference the allegations made in Count 1 as constituting elements of conspiracy, and sets forth numerous other overt acts accomplished in furtherance of the conspiracy.

The case comes before us on a large record. The trial consumed over 27 trial days; over 2000 documents were received in evidence, and the reporter's transcript of testimony exceeds 4400 pages.

The appellant, David Farrell, did not specify as error, nor does he assert as error, the insufficiency of the evidence to sustain the jury verdicts returned against him "simply in recognition of the limited role a reviewing Court has in such a situation." [Opening Brief, p. 13.] In this connection this appellant states: "While it is true it cannot be said as a matter of law there was no evidence nor inference drawable therefrom supporting the verdict, the evidence was weak and attenuated on the one real issue involved in the whole long trial—intent." [ibid. pp. 13–14.] Furthermore this appellant states: "Actually the trial of this case was remarkable in several ways, the most noteworthy of such is the astounding fact that there really is not much conflict as to the evidence. The operations and activities of TD&ME,

LATD&ME and appellant from January, 1958 to June 8, 1960 and what was or was not said and done were really basically agreed to. An agreement, however, which carries with it no concession that a scheme or conspiracy to defraud ever actually existed. The few areas of dispute and how, if at all, these areas were resolved by the jury is not really opened to review." [ibid. p. 16.] This appellant's assignment of errors is as follows:

"I. The Court erred in its instruction on the issue of security under The Security Act of 1933 on Counts One, Two, Four through Seventeen.

"II. The Court erred in allowing introduction of any evidence of the existence of the prior civil action or the issues involved therein and its determination. There was also error in the phrasing of the Court summary and in the Court's failing to instruct at that time the difference between the burdens of proof in the two actions.

"III. The Court erred in allowing any testimony of losses by customer witnesses in that such evidence was (a) immaterial and irrelevant to the crimes alleged and (b) violative of the Court's own ruling in reference to events occurring after June 7, 1960.

"IV. The Court erred in admitting Exhibit 6003 in evidence."

The appellant, Oliver J. Farrell, adopts the assignment of errors made by his co-appellant, and in addition assigns as error solely on his own behalf, insufficiency of the evidence "on all counts as a matter of law to sustain the judgment of conviction on all counts." This appellant concedes that "in the prosecution of this case the government presented an extremely thorough case, establishing how the Los Angeles Trust Deed and Mortgage Exchange had engaged in a course of conduct which violated the Securities Act of 1933 and engaged in Mail Fraud."

We will first consider the separate assignment of error of the appellant, Oliver J. Farrell, whose basic contention under this assignment is "that the evidence is insufficient to impute to him any knowledge of any fraudulent scheme or any intent to defraud. His role as only sales manager in this highly departmentalized operation is thoroughly demonstrated throughout the record, as is the fact that David Farrell made all of the policy decisions, directed the operations of the company, and caused huge profits to be made by his solely owned corporations which dealt with LATD&ME." [Opening Brief, p. 12.]

Thus, there is presented to us a narrow issue under this assignment.

The record discloses that this appellant was vice-president, secretary, a director and the sales manager of LATD&ME from the inception of the Secured 10% Earnings Program in late 1957 until June 1, 1960. He was also vice-president and a director of TD&MM. His compensation as sales manager for that period exceeded $250,000.00. As sales manager he employed, trained and supervised all local LATD&ME salesmen, and conducted weekly meetings throughout California, instructing salesmen in effective sales techniques. All branch managers took their orders from him and were directly responsible to him. He edited literature that was mailed out to investors. He furnished to investors false and misleading information concerning the liquidation policy of LATD&ME. He instructed the regional sales managers that the salesmen, in selling the 10% Earnings Programs, should resort to sham references in reassuring investors that their investments could be quickly liquidated. He assisted in drafting brochures sent to salesmen and investors which falsely represented the value and stability of subordinate trust deeds that were created against undeveloped subdivisions or vacant tracts of land. He instructed salesmen to represent that funds of LATD&ME were being used to purchase trust deeds for inventory, whereas, the funds of investors were being used for that purpose. He instructed salesmen to "play down" the

issues and scope of litigation hereafter mentioned, initiated by the Securities & Exchange Commission against him, the corporations above mentioned, his co-appellant and others. He had some knowledge that his co-appellant enjoyed profits under some participation agreements with subdividers on land on which investors purchased subordinated trust deeds. He instructed salesmen to represent to investors that the subdividers who created trust deeds for LATD&ME against vacant tracts of land had made large cash investments in the subdivision, whereas, in some instances no investment had been made by the subdivider.

From the foregoing summary, and other evidence in the record which we have not mentioned, and upon inferences which might reasonably be drawn therefrom, the jury, by verdicts returned against the appellant, impliedly found, and concluded that appellant had knowledge of and participated in a course of conduct which violated the statutes upon which the indictment is based.

The decisions reveal two tests which are applied in determining the sufficiency of either direct or circumstantial evidence to support a jury verdict. The verdict of a jury must be sustained if there is substantial evidence when viewed in the light most favorable to support the judgment. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680 (1942); Williams v. United States, 273 F.2d 781 (9th Cir. 1959), cert. den. 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868; Robinson v. United States, 262 F.2d 645 (9th Cir. 1959); Miller v. United States, 302 F.2d 659 (9th Cir. 1962). The verdict of a jury must be sustained if reasonable minds as triers of the fact, could find that the evidence excludes every reasonable hypothesis but that of guilt. Remmer v. United States, 205 F.2d 277 (9th Cir. 1953). See also: Bolen v. United States, 303 F.2d 870 (9th Cir. 1962).

■■ Under either test, and bearing in mind that the credibility of witnesses and the weight to be accorded their testimony is peculiarly within the province of the trier of facts, we conclude from our review of the record that the evidence is sufficient to sustain the jury verdicts returned against this appellant.

We will now consider ad seriatim the assignment of errors made by appellant, David Farrell, and adopted by the appellant, Oliver J. Farrell.

The first assignment:

"1. The Court erred in its instruction on the issue of security under The Security Act of 1933 on Counts One, Two, Four through Seventeen."

The Court instructed the jury that each of the above mentioned counts of the indictment charges that the appellants:

"devised and executed a scheme to defraud in the sale of 'securities' as defined in Section 2(1) of the Securities Act of 1933, namely, 'investment contracts, promissory notes, evidence of indebtedness and receipts for and guarantees of such securities,' in connection with an investment plan, program and arrangement designated by the defendants as a Secured 10% Earnings Program, Secured 10% Earnings Reinvestment Program, Secured 10% Earnings Accounts, and other similar designations, based on the sale to members of the investing public of discounted trust deeds and mortgages, in violation of Section 17(a) (1) of the Act, making it unlawful 'for any person to offer for sale any securities, by the use of any means or instruments of transportation or communication in interstate commerce, or by use of the mails, directly or indirectly, to employ any device, scheme or artifice to defraud.'"

The Court then instructed the jury that in order to sustain all or any one of such counts, it was essential that the jury find "not only that the defendants devised and engaged in a scheme to defraud by use of the mails, as alleged in

the indictment, but also that the scheme to defraud involved the sale of securities as defined by the statute and alleged in the indictment."

The Court then stated that Section 2(1) of the Act:

> "[d]efines the term 'security' to include 'any note, evidence of indebtedness, investment contract, receipt for or guarantee' of any such security."

After stating the government's contention that the various instruments offered, sold and issued in connection with the enterprise constitute and include securities within the confines of the definition above given, and the defendants' contention that such definition of securities does not include the instruments issued in the course of the offer and sale of Secured 10% Earnings, the Court stated that the jury must resolve the conflict in deciding the guilt, if any, of any of the defendants under each of such counts. The Court then stated in reference to such counts that "the requirement that the government establish that the Secured 10% Earnings offered by the defendants involved the sale of securities will be established if you find that the trust deed notes or trust deeds are 'notes' or 'evidence of indebtedness,' as defined by the Act."

In the same instruction the Court stated:

> "Regardless of whether or not you find the trust deed notes or trust deeds are 'notes' or 'evidence of indebtedness' within the applicable statute, you may find the instruments should be classified as 'investment contracts' and therefore securities within the applicable statutes."

The Court advised the jury that the term "investment contract" is not defined in the Act, but set forth certain guide lines or tests for the jury to follow in determining whether the instruments involved are "investment contracts" within the fair meaning of the statute.

Since the appellants do not question the propriety of the guide lines or tests set forth by the Court, it appears unnecessary to make further mention of them.

The Court concluded its instruction on this phase by stating to the jury:

> "If you find that the various instruments, such as trust deeds, trust deed notes, and certificates of registration and ownership, offered and sold by the defendants though not necessarily delivered to or received by certain investors, are 'notes,' 'evidence of indebtedness,' or 'investment contracts' and therefore 'securities,' you may also consider and determine whether certain instruments, for example, receipts for deposits of funds issued to investors were 'receipts for' such securities and therefore themselves securities within the meaning of the statute. However, in this situation neither the definition of 'receipt for' nor 'guarantee of' a security would be applicable in the absence of a finding that an underlying security in the form of a 'note,' 'evidence of indebtedness,' or 'investment contract' had been offered or sold. You need only find that the instruments here in question constituted securities under any one of the several definitions I have given you and not all of them or more than one of them."

Appellants contend that the instruction is erroneous. Their position is set forth in the following instruction requested by them, and which the District Court refused, which requested instruction reads as follows:

> "In determining whether there was a violation of the Securities Act, you must first find that the defendants, or any one of them, engaged in the offer or sale of securities. There are a number of different types of securities. However, you will only be concerned with the type known as an 'investment contract.' If you find that the

transactions charged were not investment contracts, then you must find the defendants not guilty of violation of the Securities Act in Counts One to Seventeen, inclusive."

In short, appellants contend that the trust deed notes or trust deeds offered, sold and issued by the defendants under their variously designated 10% Earnings Programs are not "notes," or "evidence of indebtedness," as defined by the Securities Act, and that the instruction which should have been given on the subject should have been restricted to the type of security designated in the Act as an "investment contract".

Appellants predicate their contention on the ground that the:

"[c]ommon law characteristics of a promissory note, which might render it a 'note' within the statutory definition of a 'security', have been destroyed in California by various Legislative enactments with reference to purchase money deeds of trust. Under the successive amendments to Section 580(a), 580(b), 580(d), and Section 726 of the Code of Civil Procedure of the State of California, the maker of a purchase money deed of trust has no personal liability or obligation of any sort. The holder of the trust deed has no remedy or recourse against the maker. The trust deed becomes not an evidence of indebtedness but merely evidence of a charge or lien against the land. Where there is no debt as such, there can be no evidence of indebtedness."

While we do not question the holdings of the California decisions cited by appellants in support of their interpretation of purchase money deeds of trust in California, such interpretation has no relevance in the context of the case under review.

The record reveals that the numerous investors in the Secured 10% Earnings Program were assured that they were receiving negotiable promissory notes; that their deposits with LATD&ME were like deposits in the bank; that the "estimated liquidation value" shown on their monthly statements evidenced indebtedness to them which was due and payable whenever they elected to withdraw their accounts; and that careful screening had been made as to the credit standing of the makers of the obligations. There is no evidence in the record that the investors, scattered over the United States, were informed that the makers of the obligations were shielded against liability under California law. What was represented, offered and sold to investors was not a simple purchase money trust deed note or trust deed, but a complete Secured 10% Earnings Plan or Program. To adopt appellants' interpretation would be to exalt form over substance and isolate from consideration the great mass of evidence in the record relating to the manner and means employed by appellants in conducting the 10% Earnings Plan or Program. As stated by the Supreme Court in S. E. C. v. C. M. Joiner Leasing Corporation, 320 U.S. 344, 64 S. Ct. 120, 88 L.Ed. 88 (1943):

"The test rather is what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect. In the enforcement of an act such as this it is not inappropriate that a promoters' offerings be judged as being what they were represented to be." (320 U.S. pp. 352–353, 64 S. Ct. p. 124).

In the context of this case, whether or not the instruments offered, issued and sold are "securities" under the Act is to be determined under Federal law. S. E. C. v. C. M. Joiner Leasing Corporation, supra; S. E. C. v. Variable Annuity Life Insurance Company of America, 359 U.S. 65, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959); Los Angeles Trust Deed & Mortgage Exchange v. S. E. C., 264 F.2d 199 (9th Cir. 1959).

Appellants complain that the instruction fails to define the terms "any note," or "evidence of indebtedness" appearing in the statute. In our view such ordinary terms are self-defined and require no further definition. See S. E. C. v. C. M. Joiner Leasing Corporation, supra, 320 U.S. p. 355, 64 S.Ct. p. 125.

Finally, under this assignment appellants advance the argument that this Court in L. A. Trust Deed & Mortgage Exchange v. SEC, supra, and L. A. Trust Deed & Mortgage Exchange v. SEC, 285 F.2d 162 (9th Cir. 1960), cert. den. 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241, by implication has held that the instruments herein involved are not "notes" or "evidence of indebtedness" under the Act. We do not so read said decisions.

We find no error in the instruction given by the District Court, or in the rejection by the District Court of the instruction offered by appellants.

The second assignment:

"II. The Court erred in allowing introduction of any evidence of the existence of the prior civil action or the issues involved therein and its determination. There was also error in the phrasing of the Court summary and in the Court's failing to instruct at that time the difference between the burdens of proof in the two actions."

The criminal action herein was preceded by civil litigation instituted by the S.E.C. against the corporations above named, the appellants, and others in which the Commission sought to enjoin the defendants therein named from engaging in acts and practices constituting violations of the Securities Act in offering and selling to the public trust deed notes and trust deeds under the Secured 10% Earnings Plan or Program. In supplemental or amended complaints the S.E.C. sought the appointment of a receiver and charged, *inter alia,* that the corporate defendants were misappropriating funds entrusted to their care under the Secured 10% Earnings Program and were insolvent. The District Court granted a preliminary injunction and made the appointment of a temporary receiver. This Court stayed the operation of such orders pending appeal, issued a substitute restraining order and expedited the appeal. On appeal, this Court set aside the preliminary injunction and the order appointing a temporary receiver, and the matter was remanded for a complete trial on the merits, and ordered this Court's substitute restraining order continued in full force and effect pending the trial. See 264 F. 2d 199, supra.

On May 20, 1960, the District Court, after full trial, appointed a receiver for two of the three named corporate defendants. See 186 F.Supp. 830 (1960). We interpreted the order made below as requiring a complete liquidation by the receiver of the corporate defendants. We stayed that order for complete liquidation and ordered the receiver to maintain, preserve and conserve the assets pending the determination of the appeal from the judgment below. This judgment, except as to liquidation powers of the receiver, was affirmed by this Court. See 285 F.2d 162, supra.

In conferences between Court and counsel, in the absence of the jury, counsel for the government stated that he intended to offer into evidence pleadings and judgment of the District Court in the civil litigation, copies of which had been marked for identification. Counsel for the appellants objected. The District Court indicated that portions of such documents might be relevant and material on the question of good faith, but stated other portions, if not relevant, might be prejudicial. After further discussion and consideration, the District Court refused to receive the documents in evidence and in lieu thereof made the following statement to the jury.

"Members of the jury, in lieu of the acceptance in evidence of Exhibits 1950, 5200, 5201 and 1950-A, I will give you a summary of some of the facts in such exhibits which I deem of possible relevance or materiality for your consideration.

"On March 24, 1958, the Securities & Exchange Commission filed a Complaint against Los Angeles Trust Deed and Mortgage Exchange, Trust Deed & Mortgage Exchange, Trust Deed & Mortgage Markets, David Farrell, Oliver J. Farrell, Roy A. Bonner, and Thomas Wolfe, Jr., charging the defendants with violation of certain Sections of the Securities Exchange Act, including charges that defendants were engaged in transactions, practices and a course of business which operated and would operate as a fraud and deceit upon purchasers of such alleged securities.

"On October 8th, 1958, the Commission filed an Amended and Supplemental Complaint charging the corporate defendants with misappropriation of funds entrusted to them by investors under the Secured 10% Earnings Program, and further charged that said corporate defendants were insolvent and unable to meet their current obligations. The Amended Complaint included as a party defendant Stanley C. Marks.

"The charges in both the original and the Amended and Supplemental Complaint were denied by the defendants.

"On May 20, 1960, a judgment was entered in said proceedings permanently enjoining the defendants from engaging in the acts as charged. The effect, however, of this injunction was stayed—that is, put off—by an appeal.

"Pursuant to the judgment the Receiver took charge of the assets and business of the corporate defendants on June 8, 1960.

"Now, neither the charges made in the pleadings in such case nor said judgment are to be considered by you as evidence of the truth of such charges. The above statement of facts is given to you solely in connection with your consideration of the charges made in Paragraph 11, Count one, of the indictment."

Paragraph 11, Count one of the indictment, in substance alleges: That it was an element of the scheme and artifice to defraud; that the defendants, in order to deceive and mislead investors, falsely represented to investors that the Secured 10% Earnings Program constituted a legal investment plan which conformed to all applicable laws, and had been approved and evaluated by a former counsel for S.E.C., whereas, appellants concealed from, and omitted to state to investors that the S.E.C. had filed a civil litigation to restrain defendants from engaging in practices in violation of the Act, based on allegations of fraud and insolvency. It further alleged that after the civil trial defendants continued to solicit deposits without disclosing or making known to investors the nature and import of the procedures, or the fact the program might be made subject to administration in the course of a receivership.

Appellants appear to recognize the fact that the short summary of the civil litigation given by the Court to the jury was a fair statement. Clearly, the government was entitled to offer proof on the allegations contained in paragraph 11 of Count one which were alleged to constitute an element of the scheme or plan to defraud. It appears to us that the District Court acted with more caution and restraint than the circumstances required. By the method adopted by the District Court, inflammatory statements appearing in the judgment were kept from the jury. The District Court carefully instructed the jury that the charges contained in the pleadings had been denied by the defendants, and that the summary of the civil litigation should not be considered by the jury as evidence of the truth of the charges. In view of this statement and other instructions given as to the burden of proof, we find no error on the part of the District Court.

The third assignment:

"III. The Court erred in allowing any testimony of losses by customer witnesses in that such evi-

dence was (a) immaterial and irrelevant to the crimes alleged and (b) violative of the Court's own ruling in reference to events occurring after June 7, 1960."

 The law appears to be well settled that in a prosecution of this type, the government is not required to prove that anyone was defrauded or that any investor sustained loss. Bobbroff v. United States, 202 F.2d 389 (9th Cir. 1953). Such evidence, however, is not inadmissible. Lonergan v. United States, 95 F.2d 642, 643 (9th Cir. 1938), C.D. 304 U.S. 581, 58 S.Ct. 1061, 82 L.Ed. 1543. In Linden v. United States, 254 F.2d 560 (4th Cir. 1958), the Court stated, at page 566:

"Proof that the scheme was effective should not be excluded as irrelevant. While it is true that the success of a scheme is not a necessary element of the crime defined in the Mail Fraud statute, nevertheless where, as here, the indictment charges the defendant with making captious, deceptive, and misleading solicitations, the effect of the solicitations upon the recipients is a highly pertinent fact in determining whether the solicitations are of the nature charged. Cf. Silverman v. United States, 5 Cir., 1954, 213 F. 2d 405, 407; Haid v. United States, 9 Cir., 1946, 157 F.2d 630, 632. The tendency of the form to mislead is shown by testimony that it did mislead."

We believe, as did the District Court, that such evidence was relevant and material in establishing the quality of the trust deeds and the financial condition of LATD&ME prior to the receivership.

 It was appellants' position that they should not be held responsible for losses occurring to investors after June 7, 1960, the date of the appointment of the receiver. The District Court agreed with that position and instructed the jury that:

"The evidence in this case of a bankruptcy or a receivership of Los Angeles Trust Deed and Mortgage Exchange is not to be considered by you as evidence of the guilt of any one or more of the defendants, or evidence on any other issue in the case. You shall disregard any evidence or testimony of any customer of LATD&ME and affiliated companies to the effect that a loss was suffered after June 7, 1960. The defendants are not charged with responsibility for acts occurring after that time."

The fact that in this long and complicated trial some evidence may have gotten into the record by investor witnesses that they had not received their investments back at the time their testimony was given, does not constitute prejudicial error sufficient to warrant a reversal. It is to be presumed that the jury heeded the instruction of the court and that any error in the admission of such evidence was cured by the cautionary instruction given by the Court.

 Appellants also claim that they were prejudiced by the fact that certain witnesses called by the government were aged, unemployed, uneducated, or widows with limited income. Such persons were named in various counts of the indictment as being persons to whom literature was sent by defendants, soliciting participation in the Secured 10% Earnings Program, and who participated therein, and who gave testimony that they had never gotten their money back. Appellants contend that such witnesses were deliberately staged by the government in order to evoke the sympathy of the jury and engender antipathy against the defendants. The record reveals that the government fairly presented a cross section of "investor" witnesses. Other witnesses who testified were a thirty-five year old real estate broker, a forty-four year old salesman, a fifty-three year old businessman, a school teacher, a novelist, and a retired businessman. No objection was made by appellants to the calling of witnesses of the class to which they now complain, although opportunity to do so was furnished in procedures

which had been adopted during the pretrial conferences. We find no reversible error under this assignment.

■■■ The fourth assignment:
"IV. The Court erred in admitting Exhibit 6003 in evidence."

Exhibit 6003 consists of approximately eight hundred customer "sell orders" together with their attached covering letters, all of which were contained in two baskets. Each of the "sell orders" was basically a small sheet of yellow paper instructing LATD&ME to liquidate the customer's account. The item contained in this exhibit to which the appellants make the most strenuous objection was a clipping from a newspaper of comments made by Judge Thurmond Clarke, presiding judge in the civil litigation, which comments were derogatory of appellants' business methods, and which clipping was attached to a request for liquidation of the investor's account. Appellants also contend that many of the covering letters attached to the "sell orders" were prejudicial.

The fact that the exhibit contained the objectionable items was not called to the attention of the District Court until the hearing on appellants' motions for directed verdicts or in the alternative a new trial. Exhibit 6003 was a part of the records in possession of LATD&ME at the time that it went into receivership. At the time the exhibit was offered, the only objection made by appellants was no proper foundation had been established. It appears that for some three weeks prior to the offer of the exhibit in evidence that the exhibit was available for inspection by the appellants. There is some indication gleaned from the hearing on the motions that at least one appellant had some knowledge of the existence of the newspaper clipping before the case was submitted to the jury for determination and before the exhibit was sent to the jury room along with other exhibits. In any event, appellants had knowledge of the presence in Exhibit 6003 of the items to which they now object while the jury was still deliberating.

At the conclusion of the hearing on appellants' motions for directed verdicts or in the alternative for a new trial, the District Court stated:

"As I mentioned at the start, I had read the showing in support of the motion for a new trial by each of the defendants and for a judgment in favor of each defendant. All, or practically all of the questions raised were raised at the time of trial and raised before the matter was submitted to the jury, and therefore were matters which had been considered by the court at the time of the trial itself. However, there was the new question which was raised, or you might say new questions in connection with Exhibit 6003. Now with the explanation which we have here this morning, I feel that there was an obligation on, first of all, the part of the defendants, when the defendants knew that that particular material was in 6003, to so advise the court, and of course there is no doubt but that the court would have removed that from the file, and if there was other material in the file of a like nature, such as letters, there is no doubt but that the court would have removed that. I think the record here speaks for itself that during the course of the trial every time a matter was mentioned where some objectionable material was on an exhibit, that the court, if it admitted it at all, admitted it provisionally on the removal of the objectionable material. So in view of that fact, and of the further fact that before the jury returned its verdict that counsel for David Farrell was informed, at least, that the exhibit might be in the possession of the jury, and that that information was not called to the attention of the court, at which time the court might then have called for a return of the exhibits,

in order to determine if the jury had in any manner investigated this particular exhibit, at that time the court could even have interrogated each one of the jurors as to whether they had read the particular article. And maybe the court, if the jurors had said yes, why, at that time maybe the court would have declared a mistrial. But now the defendants have taken their chance, and whether the jurors or any one of the jurors read it, of course we don't know. I, therefore, feel that if there was any error committed in permitting this or the other exhibits containing, say, like material, if there are such, why, that error was at least in part invited by the defendants and that they should not at this time be permitted to claim that it should not have happened."

We find ourselves in agreement with the views expressed by the District Court, and hold that the error, if any, in the admission into evidence of the exhibit does not warrant reversal.

Appellants' final contention in connection with this assignment is that Exhibit 6002 which was received in evidence as a summary of Exhibit 6003 was not a true summary of Exhibit 6003, in that it did not contain a complete summary but was only a synopsis of the requests for liquidation which were on hand on June 8, 1960. The summary listed the customer's number, the date of request and the amount that was requested for liquidation. The aggregate amount requested for liquidation was $3,600,000.00 The summary was exactly what it purported to be, and the fact that it may not have contained other information does not render it inadmissible as a summary.

From our study of the record in this case, we find that none of the errors assigned warrants a reversal of the judgment of conviction. The trial was a protracted and a complicated one. The District Judge presided over the trial with ability, fairness, impartiality, and was ever alert to protect the substantial rights of the appellants. In our judgment the appellants received a fair trial.

The judgments of conviction are affirmed.