**SECURITIES AND EXCHANGE COM-MISSION, Plaintiff,**

v.

**Estelle LATTA, Defendant.**

**Civ. A. No. 8619.**

United States District Court
N. D. California, N. D.

April 26, 1965.

Arthur E. Pennekamp, Regional Administrator, F. E. Kennamer, Jr., Asst. Gen. Counsel, Jack Redden, San Francisco, Cal., for S. E. C.

Jack Leavitt, George T. Davis, Howard C. Ellis, San Francisco, Cal., for defendant Estelle Latta.

MacBRIDE, District Judge.

**I**

INTRODUCTION

A. *Pleadings*

1. On March 11, 1963, the Securities and Exchange Commission filed its complaint to enjoin the defendant Estelle Latta from engaging in acts and practices in violation of Section 5(a) and (c) of the Securities Act of 1933 ("Act"), 15 U.S.C. § 77e(a) and (c), in the offer and sale of the securities described below.

2. On October 11, 1963, the Commission with the consent of the defendant and the approval of the court, filed an amended complaint adding allegations that the defendant was engaging in acts and practices in violation of Section 17 (a)(2) and (3) of the Act, 15 U.S.C. § 77q(a)(2) and (3).

3. The first count of the amended complaint, which is cast under Section

5(a) and (c) of the Act, 15 U.S.C. § 77e(a) and (c), alleges that since before July, 1959, the defendant has been making use of means and instruments of transportation and communication in interstate commerce and of the mails ("jurisdictional facilities") to offer, sell and deliver securities described as "investment contracts" and "certificates of interest and participation in profit-sharing agreements" issued in connection with the sale to members of the public of percentage interests in a purported Estate of Mark Hopkins, deceased, and that such securities have been and are being offered and sold on the basis of representations that litigation to recover such estate for the benefit of investors will be conducted by and at the direction of the defendant; and that no registration statement as to such securities has been filed or is in effect with the Commission.

4. The second count, which is cast under Section 17(a)(3) of the Act, 15 U.S.C. § 77q(a)(3), alleges that since before July, 1959, the defendant, in the offer and sale of the securities, by use of jurisdictional facilities, has been engaging in transactions, practices and a course of business which operate and would operate as a fraud and deceit upon the purchasers of the securities, by making untrue, misleading and deceptive statements of material facts representing and implying that—

(a) the distribution of the Estate of Mark Hopkins accomplished in 1883 may be voided by judicial action at the instance of the defendant; and

(b) the Estate of Mark Hopkins may be judicially redistributed to the "rightful heirs" of Mark Hopkins and to the purchasers of the securities issued, offered and sold by the defendant,

and other similar affirmative misrepresentations.

5. The second count also alleges that in making the untrue and deceptive statements set forth above the defendant has omitted and is omitting to disclose that

the defendant, acting on her own behalf and on behalf of other alleged heirs of Mark Hopkins, was a plaintiff in an action in the United States District Court for the Northern District of California, Northern Division, which was brought to invalidate the 1883 distribution of the Estate of Mark Hopkins; that the case was dismissed by the district court; that an appeal was taken in the United States Court of Appeals for the Ninth Circuit which, in 1949, in affirming the judgment of the district court, specifically held that the 1883 decree of distribution was valid, that the entire estate had been legally distributed, and that the claims asserted were barred by the statute of limitations and by laches.

6. The third count of the amended complaint, which is cast under Section 17(a)(2) of the Act, 15 U.S.C. § 77q(a)(2), alleges that since before July, 1959, the defendant has been making use of jurisdictional facilities in the offer and sale of the securities to obtain money and property by means of the untrue statements and omissions of material facts specified in the second count.

7. The demands for injunctive relief set forth in the amended complaint follow the language of the several counts and are designed to enjoin and restrain the defendant from engaging in the acts and practices described above.

8. The answer to the amended complaint, except for an admission that the defendant is a resident of Sacramento, California, consists of an unverified general denial.

B. *Status of Proceedings*

1. On March 11, 1963, the day the original complaint was filed, this court entered an order temporarily restraining the defendant from violating Section 5 (a) and (c) of the Act, 15 U.S.C. § 77e (a) and (c) (the registration provisions). The temporary restraining order was continued in effect, with the consent of the defendant, until April 16, 1963, when it was superseded by a preliminary injunction which was also entered with the consent of the defendant.

2. On July 6, 1964, the Commission filed a motion for summary judgment, or in the alternative for an order narrowing the issues. The Commission's motion was accompanied by extensive affidavits and a deposition of the defendant.

3. Subsequently, on October 19, 1964, the defendant filed a motion for summary judgment. The defendant's motion was not accompanied by any affidavits countervailing those filed by the Commission.[1]

## II

### FINDINGS OF FACT

A. *Mark Hopkins Estate and Contract Claimants*

1. The fortune left by Mark Hopkins who died about eighty-five years ago was distributed some eighty years ago in accordance with a decree of distribution entered in 1883.

2. The defendant Estelle Latta claims to be a "double blood heir" of Mark Hopkins. She is the author of a book entitled *Controversial Mark Hopkins*, and regularly contributes a column headed "Mark Hopkins" in *The Public Appeal*, a publication issued weekly in Durham, North Carolina. This column frequently includes references to the defendant's efforts through the years to recover the Mark Hopkins Estate for the "rightful heirs".

3. For many years the defendant has been engaged in securing powers of attorney from the purported heirs of Mark Hopkins authorizing her to act as attorney-in-fact on their behalf in attempting to recover and arrange for the redistribution of the Mark Hopkins Estate.[2]

4. Also, for many years, the defendant has been engaged in offering and selling to alleged heirs of Mark Hopkins and their descendants, as well as to other individuals, instruments entitled "Contract in Event of Recovery", a specimen of which is set forth below:

### CONTRACT

#### "In Event of Recovery"

For and in consideration of One Hundred Dollars ($100.00) to me in hand paid—the receipt for same is hereby acknowledged. I hereby assign and set over to

(NAME) Mr. Albert Sheppard
(ADDRESS) 177 La Grange St.
     Newnan, Georgia

a sum equal to One Per Cent of one-fifth (1/5) of one-sixth (1/6) of one-seventh (1/7) interest in the estate of Mark Hopkins and Moses Hopkins deceased.

The said assignment is given to the said (NAME) Mr. Albert Sheppard with no revocation what-so-ever to have and to hold as his and/or hers until the final distribution of the said estates.

It is further understood and agreed that the distribution is to be made as fast as the property is collected in by the administrator of said estates.

DATED IN Newnan, Georgia
THIS 27th DAY OF December, 1963
     (SEAL) Estelle Latta
WITNESSES Mrs. L. C. Moore
WITNESSES L. C. Moore

5. Many of these instruments (hereinafter referred to as "contracts") have been sold to members of the public. The contracts have been offered and sold not only to members of the constantly expanding group of alleged heirs of Mark Hopkins, but also to individuals con-

---

[1]. The defendant argues that much of the testimony contained in the Commission's affidavits would be inadmissible at trial and is, therefore, insufficient to support a motion for summary judgment. In making these findings the court has disregarded any hearsay or other incompetent evidence contained in the Commission's affidavits, while at the same time giving full effect to all competent evidence.

New York Life Insurance Co. v. Wilkinson Veneer Co., (D.C.La.1949) 86 F. Supp. 863.

[2]. The gathering of powers of attorney is a continuing and broadening process, as alleged heirs die and it becomes necessary to secure new powers from their descendants or devisees. Some 475 powers of attorney have been executed by alleged heirs.

nected by blood, marriage or mere friendship with the families of such heirs.

6. Each of the contracts which purports to assign a sum equal to 1 per cent of 1/5 of 1/6 of 1/7 "in the estate of Mark Hopkins and Moses Hopkins deceased" represents an undivided 1/21,000 distributive share. Thus, if sufficient contracts were sold at $100 per unit to dispose of distributive shares in 100 per cent of the alleged estate, the defendant would realize a total of $2,100,000.[3]

7. The defendant admits that she has never disclosed to investors whether she intended to use the money realized from the sale of the contracts for her own benefit, or to conduct litigation to recover the Mark Hopkins Estate, or whether she intended to disburse the money in some other way, because that is "none of their business".

### B. *Instruments as Securities*

█ 1. The contracts which purport to assign undivided 1/21,000ths distributive shares in the Estate of Mark Hopkins "in event of recovery" are "investment contracts" and "certificates of interest and participation" and therefore securities within the meaning of Section 2(11) of the Act, 15 U.S.C. § 77b(11). The value, if any, of the contracts rests upon the ability of the defendant, as the promoter of this litigious enterprise, to establish in the courts the claims of the alleged heirs of Mark Hopkins and the contract claimants and to secure an accounting and redistribution of the estate. Unless the defendant is successful in that undertaking the contracts will remain scraps of worthless paper. This is a situation in which the economic welfare of investors is "inextricably woven" with the ability of the promoter to carry out a common enterprise for the benefit of those whose investments are solicited. Los Angeles Trust Deed & Mortgage

Exchange v. S.E.C., 285 F.2d 162, 172 (C.A.9, 1960), certiorari denied 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241; Farrell v. United States, 321 F.2d 409 (C.A. 9, 1963), certiorari denied 375 U.S. 992, 84 S.Ct. 631, 11 L.Ed.2d 478.

2. No registration statement relating to the securities issued by the defendant and sold by her to members of the public has been filed with the Securities and Exchange Commission at any time.

### C. *Litigation to Establish Claims to Mark Hopkins Estate*

1. In Latta v. Western Investment Company, (1949) 173 F.2d 99, certiorari denied 337 U.S. 940, 69 S.Ct. 1516, 93 L.Ed. 1744 the Court of Appeals for the Ninth Circuit definitively disposed of the claims of contract holders as well as other alleged heirs of Mark Hopkins. The court, at 173 F.2d 107, in affirming a judgment of dismissal in a suit brought by the defendant in the present action and other alleged heirs for a decree voiding the 1883 decree of distribution and for other relief, held that the decree validly distributed the entire estate, and that the claims asserted were barred by limitations and gross laches, noting that:

> * * * Time, death and destruction by fire have blotted out the events of that period beyond the restoration of the living. It is not only a closed chapter but a sealed chapter in the lives of those involved. The burned records cannot be restored. The dead cannot be resurrected. The fortune accumulated by Mark Hopkins long ago passed through and into many hands, far removed from the generation in which he lived. To attempt to disentangle this estate would be unjust and inequitable. Equity frowns upon stale demands. Equity declines to aid those who have slept on their rights. The ap-

---

3. The defendant asserts, however, that some of the contracts have been given away to "deserving person[s]" or issued for services. The defendant asserts that while she needs "more money every day" to finance the prosecution of her claim to the Mark Hopkins Estate, she does not know and will not allow herself to think about how much additional money she contemplates raising.

pellants' alleged claims long ago were lost by reason of gross laches.[4]

2. The defendant's unsuccessful suit was not the first such attempt made by alleged heirs to establish claims to the Mark Hopkins Estate. In February, 1927, some 49 years after Mark Hopkins died, Norman Lee Freeman brought suit in the United States District Court for the Northern District of California on behalf of himself and about 450 other alleged heirs. The object of the suit was to establish a trust in favor of all such heirs in securities of great value which it was alleged Mark Hopkins owned at the time of his death, and which at the time the suit was brought were in the possession of certain defendant banks.

3. The suit alleged that existence of the securities had been concealed from the probate court by the widow of Mark Hopkins and his brother, Moses Hopkins, who were successively administratrix and administrator of the estate, and who were the only beneficiaries named in the 1883 decree of distribution. The suit was dismissed by the district court "because of laches" and for "want of equity." The Court of Appeals for the Ninth Circuit affirmed the decree of dismissal. (Freeman v. Hopkins, 32 F.2d 756, certiorari denied 280 U.S. 575, 50 S.Ct. 30, 74 L.Ed. 626).

4. The defendant has continued her solicitations of investments in the Mark Hopkins Estate for more than fifteen years after the court of appeals barred any reasonable expectation that her quest for treasure through litigation will end in anything except disappointment.

### D. Use of the Mails and Facilities of Interstate Commerce in Sale of Contracts

The mails and facilities of interstate commerce have been used by the defendant to offer, sell, and deliver the securities to investors, and in carrying out her deceitful and untruthful course of business in connection with the sale of the securities.

## III

### CONCLUSIONS OF LAW

■ 1. The uncontroverted facts establish that the defendant Estelle Latta has engaged and is engaging in the offer and sale of unregistered securities, in violation of Section 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. § 77e(a) and (c).

2. The uncontroverted facts also establish that the defendant has misrepresented and is misrepresenting and withholding material facts from investors, in violation of Section 17(a)(2) and (3) of the Act, 15 U.S.C. § 77q(a)(2) and (3).

■ 3. The Securities and Exchange Commission is entitled to summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure.[5]

---

4. The defendant now describes this litigation as an effort, "to recover the stock [of Western Investment Company] on the Wall Street Stock Exchange which the S.E.C. controls that they deliberately stole from the Mark Hopkins Estate * * *" At one meeting of investors the defendant described a federal court suit involving the Securities and Exchange Commission and a trust fund in excess of three billion dollars which the defendant claimed was pending. The action now before this court must be the litigation to which she referred.

5. Summary judgment is a proper means of enjoining violations of the securities laws where no genuine issue of material fact exists. S.E.C. v. Payne, 35 F.Supp. 873, S.D.N.Y.1940; S.E.C. v. Searchlight Consolidated Mining & Mill. Co., 112 F.Supp. 726, D.Nev., 1953; S.E.C. v. Larson (E. D.Mich.1941) 4 F.R.Serv. 36a.54, p. 565; 6 Moore's Federal Practice, 2nd Ed. par. 56.17[54] p. 2260.