672 F.2d 766
 Fed. Sec. L. Rep. P 98,634, 10 Fed. R. Evid. Serv. 254
Joseph KRAMAS, Plaintiff-Appellee,
v.
SECURITY GAS & OIL INC., a California Corporation,
Defendant-Appellant.
Joseph KRAMAS, Plaintiff-Appellant,
v.
SECURITY GAS & OIL INC., a California Corporation, Defendant-Appellee.
 Nos. 78-3301, 78-3451.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 11, 1980.
Decided March 26, 1982.
 
 John J. Mullane, Jr., and Robert G. Knechtel, San Francisco, Cal., for defendant-appellant.
 Charles F. Brega, Roath & Brega, Denver, Colo., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before BROWNING, Chief Judge, KENNEDY, Circuit Judge, and HOFFMAN,* District Judge.
 BROWNING, Chief Judge:
 
 
 1
 Joseph Kramas purchased limited partnership interests in three oil and gas drilling projects in which Security Gas & Oil, Inc. (SEGO) was the general partner. Raymond Miller and Emanuel Rappoport were officers of SEGO and James Barrons was Kramas' stockbroker. Kramas purchased the partnership interests after reading prospectuses prepared by SEGO and after conversations with Miller and Barrons. The wells drilled by SEGO produced little, and Kramas lost most of his investment.
 
 
 2
 Kramas' complaint alleged that SEGO and the individual defendants violated various sections of the federal securities laws and breached their fiduciary duty to him under state law by misrepresenting certain facts and omitting to state others. The jury found for Kramas on the state law claim, but for SEGO and the individual defendants on all the federal claims. Both sides appeal.
 
 I. Materiality and Reliance
 
 3
 Kramas argues that the trial judge erred in instructing the jury on the elements of an action under Rule 10b-5, issued pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).
 
 
 4
 The trial judge began by instructing that a material fact is "one that a reasonable person in the circumstances of the Plaintiff would attach importance to in determining his choice of action in this kind of transaction." This means, explained the court, "one that a reasonable person and in the plaintiff's position, would deem important in deciding whether or not to purchase a limited partnership interest in an oil and gas drilling project." R.T. 702. Kramas does not appear to contest the correctness of this formulation; indeed, the authorities he cites state the rule in the same way. See, e.g., Marx v. Computer Sciences Corp., 507 F.2d 485, 489 (9th Cir. 1974).
 
 However, the trial judge then elaborated:
 
 5
 A fact omitted to be stated is the kind of thing that a reasonable person would have changed his mind about had he known the true fact.
 
 
 6
 In the case of the matter stated, is it the sort of thing that, if stated correctly, would have dissuaded the investor from making the investment(?)
 
 
 7
 R.T. 703.
 
 
 8
 At the conclusion of the court's instructions, counsel for Kramas made the following objection:COUNSEL: Your Honor, I would only object to the language stated by the Court concerning the reliance being that it would have dissuaded the plaintiff from investing. I didn't believe that to be the law.
 
 
 9
 I think, as I understand the law, to be sufficient so that he would have considered it; but that the law does not say, requirement of dissuading him from investing.
 
 
 10
 THE COURT: I think I put it in the alternative, didn't I?
 
 
 11
 COUNSEL: I didn't understand it that way.
 
 
 12
 SEGO argues that the objection went only to the instructions concerning misrepresentations and not to those regarding omissions, and, as applied to misrepresentations, the court's definition of materiality was correct. The argument is without merit.
 
 
 13
 Although Kramas' objection was somewhat ambiguous, it was sufficient to alert the court to error and thus satisfied Fed.R.Civ.P. 51. Brown v. Avemco Inv. Corp., 603 F.2d 1367, 1372-74 (9th Cir. 1979). The judge's response, "I think I put it in the alternative," could only refer to one sentence in the instructions, and this sentence immediately preceded the court's erroneous instruction that the burden was on the plaintiff to show he would have acted differently had he been aware of the fact omitted.[1] The instruction was erroneous because it implied plaintiff must prove reliance upon alleged omissions by showing actual influence upon behavior. Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), establishes that reliance upon alleged omissions is to be presumed from materiality.[2]
 
 
 14
 Even if the objection were directed solely to the instructions as to misrepresentations rather than omissions, the materiality instructions were wrong. The definition of materiality is the same whether misrepresentations or omissions are involved, and as the Supreme Court said in TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), this standard "does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote."[3] See also Affiliated Ute Citizens, supra, 406 U.S. at 153-54, 92 S.Ct. at 1472; Marx, supra, 507 F.2d at 489 & n.6.
 
 
 15
 II. Section 17(a) of the Securities Act of 1933
 
 
 16
 Kramas argues that the court erred in failing to instruct the jury that no showing of reliance was required in a private suit under § 17(a), in contrast to a private suit under Rule 10b-5 alleging misrepresentation.[4]
 
 
 17
 Kramas points to nothing in the language, history, or purpose of Rule 10b-5 and § 17(a) that would support the argument that reliance is an element of a private cause of action under one but not the other. The cases have held, or assumed, the contrary. See Ohio v. Peterson, Lowry, Rall, Barber & Ross, et al., 651 F.2d 687, 689 n.1 (10th Cir. 1981); Lanza v. Drexel & Co., 479 F.2d 1277, 1280 n.2 (2d Cir. 1973) (en banc); Johns Hopkins University v. Hutton, 488 F.2d 912, 915 (4th Cir. 1973).
 
 
 18
 The Supreme Court held in Aaron v. SEC, 446 U.S. 680, 701-02, 100 S.Ct. 1945, 1958, 64 L.Ed.2d 611 (1980) that scienter is a necessary element of a violation of Rule 10b-5 and § 17(a)(1), but not of §§ 17(a)(2) or 17(a)(3). However, nothing in Aaron suggests a difference between Rule 10b-5 and § 17(a)(2) in respect to the element of reliance.
 
 
 19
 Cases holding that reliance by particular investors need not be shown in a criminal prosecution or in an action brought by the Commission for injunctive relief are inapposite. SEC v. First American Bank & Trust Co., 481 F.2d 673, 680-81 (8th Cir. 1973); United States v. Amick, 439 F.2d 351, 366 (7th Cir. 1971); Farrell v. United States, 321 F.2d 409, 419 (9th Cir. 1963). Cf. United States v. Ashdown, 509 F.2d 793, 799 (5th Cir. 1975). Prosecutions and enforcement actions involve interests and procedures different from those involved in private damage suits. The Government is not "required to prove that anyone was defrauded or that any investor sustained loss," Farrell, supra, 321 F.2d at 419, but such proof is essential to recovery by a private investor.
 
 III. Statute of Limitations
 
 20
 The trial court did not err in granting summary judgment on Kramas' claims under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l, and § 25500 of the California Corporations Code, on the ground these claims were barred by the one-year statute of limitations of 15 U.S.C. § 77m and Cal.Corp.Code § 25506, respectively.
 
 
 21
 The limitations period under 15 U.S.C. § 77m does not begin to run until plaintiff discovers the facts constituting the violation or in the exercise of reasonable diligence should have discovered them. Johns Hopkins University, supra, 488 F.2d at 917. The same principle applies under Cal.Corp.Code § 338(4), Turner v. Lundquist, 377 F.2d 44, 46, 47 (9th Cir. 1967), and, in view of the similarity in language, we think also under Cal.Corp.Code § 25506.
 
 
 22
 If the running of the statute of limitations depends upon when the plaintiff became aware, or should have become aware, of a fraud, questions of fact are usually involved. Kubik v. Goldfield, 479 F.2d 472, 477 & n.12 (3d Cir. 1973). However, reasonable diligence is tested by an objective standard, Fox v. Kane-Miller Corp., 542 F.2d 915, 917 (4th Cir. 1976), and when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct, the issue may be resolved by summary judgment. See Winkelman v. Blyth & Co., Inc., 518 F.2d 530, 531 (9th Cir. 1975). See also Cook v. Avien, Inc., 573 F.2d 685, 697 (1st Cir. 1978).
 
 
 23
 This lawsuit was filed in February 1977. To avoid the bar of the statutes of limitations, Kramas must not have discovered the alleged fraud before February 1976. Letters written by Kramas during 1974 and 1975 and excerpts from his deposition testimony demonstrate Kramas knew or should have known of the facts giving rise to his complaint long prior to that date.
 
 
 24
 In a letter dated July 9, 1974, Kramas complained to SEGO of numerous problems with the drilling projects. He described an earlier project as a "complete disaster," and stated he had received conflicting stories from SEGO management about the status of another project. On October 8, 1975, Kramas wrote fellow limited partners that there was a "serious question" whether SEGO was "merely incompetent, or in fact crooked." Kramas said he had been refused access to the company's books and that SEGO had breached the partnership contract in various ways. He indicated a desire to retain counsel to determine whether a lawsuit should be brought against SEGO, and asked if any of the other investors would be interested in joining. The next day Kramas wrote he had reported SEGO to the SEC and the state Commissioner of Corporations. He said SEGO had committed a flagrant abuse of the law by failing to file the Articles of Partnership. He noted that a geologist he had met had indicated he was bitter about his relationship with Miller and felt he had been "abused by Miller's frequent empty promises." On October 10, 1975, Kramas sent fellow investors a copy of a newspaper article regarding a suit charging fraud in oil drilling partnerships and asked them to notice "similarities to our complaints against" SEGO and Miller. On November 5, 1975, Kramas wrote other investors that SEGO had "misappropriate(d)" funds, "ripped off" the investors and was engaged in "robbery" in respect to partnership moneys.
 
 
 25
 Kramas testified on deposition that he entertained "some skepticism" about defendants by July, 1974, and that each time he had conversations with Miller and Rappoport thereafter, "additional elements of doubt c(a)me across." Kramas dep., 173. He testified he had learned that an Indian Creek well was producing a maximum of 30-40 barrels per day, rather than 150 barrels as stated by SEGO. Id. at 240. In February 1975, Kramas participated in a meeting with some of the defendants and a fellow investor at which the possibility of criminal fraud on the part of SEGO was discussed. Id. at 176-81. Shortly thereafter, Kramas discussed his concerns about SEGO with the SEC. Id. at 181-84.
 
 
 26
 This undisputed evidence was sufficient to establish that Kramas should have known of the allegedly fraudulent conduct upon which he now relies. Kramas argues his continued confidence in the defendants is reflected in evidence that he was "beguiled, patronized and solicited" by SEGO and continued to invest in SEGO projects. But the question is not whether Kramas continued to repose confidence in SEGO but whether in the exercise of reasonable diligence he should have been aware of defendants' allegedly fraudulent conduct. Fox v. Kane-Miller Corp., supra, 542 F.2d at 917. The evidence relied upon by Kramas was not sufficient to create a factual dispute on that issue.
 
 IV. Other Issues
 
 27
 Kramas argues that defendant SEGO failed to disclose it had received a "free" 5% interest in the DuBois and Saginaw projects and this omission constituted a violation of the securities laws as a matter of law. But Barrons testified that SEGO's interest in the Saginaw project had been disclosed to Kramas, thus presenting an issue of credibility for the jury. SEGO does not contend that its interest in the DuBois project was disclosed, but if the jury believed Barrons' testimony that Kramas was aware of SEGO's 5% interest in Saginaw, yet invested in the Saginaw project anyway, the jury could have concluded that Kramas would not have considered SEGO's similar interest in DuBois to be significant. Thus Barrons' testimony if believed was sufficient to rebut any presumption of reliance on the failure to disclose SEGO's interest in DuBois, and thus to present an issue for the jury.[5]
 
 
 28
 Kramas argues that false and misleading "Economic Projections" contained in the prospectus for the DuBois and Indian Creek projects were "actionable as a matter of law." Lorenz, defendants' expert witness, testified the economic projections were reasonable. R.T. 513-35. Whether they were unreasonable and "false" presented a question of fact. Even assuming the forecasts were unreasonable, the evidence raised a jury question as to whether Kramas relied upon them.
 
 
 29
 It was not reversible error for the trial court to refuse to admit evidence of a consent decree entered in a prior SEC enforcement proceeding against Miller, SEGO, and other persons offered under Fed.R.Evid. 404(b). The consent decree involved no finding of culpability and no judgment of wrongdoing, and contained a recitation that it did not constitute evidence of wrongdoing in the enforcement proceeding or in any other proceeding. Cf. Garcia v. Aetna Cas. & Sur. Co., 657 F.2d 652, 655 (5th Cir. 1981); United States v. Herrera-Medina, 609 F.2d 376, 379 (9th Cir. 1979). Moreover, whether the danger of prejudice from admission of evidence of other wrongful acts-the decree or direct evidence of the alleged wrongful conduct-outweighed its probative value was committed to the trial court's sound discretion. United States v. Walls, 577 F.2d 690, 696 (9th Cir. 1978). In this instance the probative value of the evidence was limited-it related to different transactions and alleged misrepresentations of a different kind-while the prejudicial impact of the evidence upon the jury was obviously substantial. Moreover, admission of the evidence would have opened large areas of proof on collateral matters. The district court could reasonably conclude that the balance favored exclusion.
 
 
 30
 SEGO offered the testimony of a tax accountant regarding the tax benefits that would accrue to an oil well investor with an annual income of $100,000. Kramer objected to the evidence as not "material or relevant." This objection was properly overruled. It was defendants' position throughout trial that the Kramas investments were motivated by tax considerations, and not by defendants' alleged omissions or misrepresentations, thus negating the element of reliance. We decline to consider the quite different objections to the admissibility of the evidence raised by Kramas for the first time on appeal.
 
 V. The Cross-Appeal
 
 31
 SEGO and the other defendants argue on cross-appeal that California state law requires an action for an accounting before one partner may sue another, and Kramas instituted no such action. This contention is made for the first time on this appeal, and we decline to consider it. The defendants also argue there was no rational basis for the jury's award of $3,232 in damages. Defendants failed to move for a new trial, and are therefore precluded from raising this issue on appeal. Ryen v. Owens, 446 F.2d 1333, 1334-35 (D.C.Cir.1971). See 6A J. Moore, Federal Practice P 59.15(3) (2d ed. 1979).
 
 
 32
 The judgment as to plaintiff's Rule 10b-5 and § 17(a) claims must be reversed because of the erroneous instructions on materiality. The judgment dismissing plaintiff's § 12(2) and Cal.Corp.Code § 25500 claims is affirmed. Judgment for plaintiff for breach of fiduciary duty is affirmed.
 
 
 33
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Walter E. Hoffman, Senior Judge, United States District Court for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Three pages later in the transcript after the instructions on materiality quoted supra, the court instructed:
 While the plaintiff must establish he relied upon any false representations, it would be a little difficult to imagine how you could establish that you relied upon any failure to convey material information because you can't rely upon something that you couldn't know about.
 But in judging any material information that was omitted, consider that in the light of the (sic) its materiality. Consider whether it is the kind of thing that would have been relied upon or would have been thought important had the omitted information in fact been conveyed to the purchaser.
 The burden in that case, I would think would be that the plaintiff would show that his decisions would have been different had he been made aware of the fact omitted in the presentation. (Emphasis added.)
 R.T. 706-07.
 
 
 [2]
 The parties and the district court assumed the holding of Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54 (1972), that when materiality has been established reliance is presumed, applied only in suits based upon omissions, and that in suits based upon misrepresentations actual reliance must be shown. We therefore decide this case on that assumption. We do not reach the question, twice reserved, of whether Affiliated Ute Citizens applies equally to misrepresentations. See Keirnan v. Homeland, Inc., 611 F.2d 785, 788 & n.4 (9th Cir. 1980), and Little v. First California Co., 532 F.2d 1302, 1304 n.4 (9th Cir. 1976)
 
 
 [3]
 TSC Industries was a suit under Rule 14a-9, but the same standard of materiality applies in actions under Rule 10b-5. Sharp v. Coopers & Lybrand, 649 F.2d 175, 187 & n.17 (3d Cir. 1981)
 
 
 [4]
 On appeal defendants contend for the first time that there is no private right of action under § 17(a). The contention is not properly before us. Wellman v. Jellison, 593 F.2d 876, 879 (9th Cir. 1979); Ralston-Purina Co. v. Bertie, 541 F.2d 1363, 1368 (9th Cir. 1976)
 
 
 [5]
 The Affiliated Ute Citizens presumption of reliance is rebuttable. See Sharp, supra, 649 F.2d at 188-89; Huddleston v. Herman & MacLean, 640 F.2d 534, 547-48 (5th Cir. 1981). See generally Note, The Reliance Requirement in Private Actions under SEC Rule 10b-5, 88 Harv.L.Rev. 584, 597-600 (1975)