## HAID v. UNITED STATES.
### No. 10978.

Circuit Court of Appeals, Ninth Circuit.
Oct. 7, 1946.

Bertil E. Johnson, of Tacoma, Wash., for appellant.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Harry Sager, Asst. U. S. Atty., of Tacoma, Wash., for appellee.

Before DENMAN, BONE, and ORR, Circuit Judges.

BONE, Circuit Judge.

██ Defendant below appeals from a conviction in the district court for the crime of impersonating a federal officer.[1] Appellant was operating a private detective agency and the charges grew out of his efforts to enhance his business. No contention is made upon appeal as to the adequacy of proof and the only assignments of error concern the admissibility of certain evidence.[2]

Counsel are in agreement that the first five assignments of error raise only one question of law: Should the victims of the alleged impersonations have been allowed to testify that they believed the defendant to be a Government officer?

We shall only discuss, in detail, assignment of error No. 2, concerning the testimony of Ralph Mathwig, because it is typical of all and what we have to say about it is applicable to the other objections. Appellant objected to the following testimony in the court below on the ground that it violated the opinion rule:

"Q. The question is, Mr. Mathwig, what did you believe Mr. Haid to be? A. Well, after Mr. Haid asked me whether my sister had told me about whether he worked for the Government or not, and he showed me

---

[1] 18 U.S.C.A. § 76, as amended Feb. 28, 1938—"Whoever, with intent to defraud either the United States or any person, shall falsely assume or pretend to be an officer or employee acting under the authority of the United States, or any department, or any officer of the Government thereof, or under the authority of any corporation owned or controlled by the United States, and shall take upon himself to act as such, or shall in such pretended character demand or obtain from any person or from the United States, or any department, or any officer of the Government thereof, or any corporation owned or controlled by the United States, any money, paper, document, or other valuable thing, shall be fined not more than $1,000 or imprisoned not more than three years, or both."

[2] Appellant's assignment of error No. 9—the refusal of the trial court to grant a new trial—was based upon the alleged errors set out above. But in any event there was sufficient evidence to sustain the conviction and sentence. The appellant was prosecuted under an indict-

ment containing seven counts and was found guilty by the jury on counts 3, 4 and 5. He was sentenced to 18 months imprisonment upon each count, the sentences to run concurrently. If the sentence on any one of the counts is sustainable, the judgment must be affirmed. Considering only count 4, we are of the opinion that there was sufficient evidence to sustain the conviction. Count 4 alleged that the appellant, with the intent to defraud, falsely impersonated a Special Agent of the Federal Bureau of Investigation and by reason of such pretended character obtained $100 from C. H. Camfield and Laura Camfield. To prove these allegations the Government offered the unimpeached and uncontradicted (save as denied by the defendant) testimony of Laura Camfield, that the appellant had led her to believe that he was an agent of the F.B.I. and that she had paid him $100 in reliance upon that belief. A receipt for the money that was given by Haid was then placed in evidence. Finally, C. H. Camfield corroborated the testimony of his wife, Laura Camfield.

the badge, why I took him for a Government employee.

"Q. You took him for that? A. I took him for a Government employee.

"Q. Did you take him for any particular Government employee? A. By the badge, I took him he represented the F.B.I."

Appellant now urges that the trial court committed reversible error by admitting this kind of testimony. On the other hand, the position of the appellee is that the state of mind of the victim is a fact; that it may be proved as any other fact—by the statements of the person himself; finally that the fact is relevant in this case and therefore this testimony was properly admitted.

▮ The law on this point is reasonably clear: This court has already held that the state of mind of an individual is a fact, and further that the person himself may testify directly thereto. Walter v. Rowlands, 9 Cir., 28 F.2d 687; Deal v. United States, 9 Cir., 11 F.2d 3. (The last case was reversed upon another ground by the United States Supreme Court and no criticism was leveled at the holding on this point). See also, 20 Am.Jur. p. 312.

But was the state of mind of the victim, as a fact, relevant in this case? We think that it was. If it is necessary, in establishing the charge, to prove that the victim relied upon the pretense of the impostor, then it becomes necessary to further show that the victim believed in the pretense. Therefore the prosecution faced the necessity of showing the state of the victim's mind. In Littell v. United States, 9 Cir., 169 F. 620, at page 621, this court said:

"The plaintiff in error contends that there was no evidence to go to the jury to show that Mrs. Dabney *relied upon the representations* of the plaintiff in error that he was an officer of the United States in extending credit to him * * * This contention is not sustainable. * * * She [Mrs. Dabney] *testified that she believed them and relied upon them in advancing money and extending credit.* * * * and Mrs. Dabney *testified expressly that in lending him the money she relied, not upon the draft, but upon the standing of the plaintiff in error as an officer of the United States."* [Emphasis supplied.]

The purpose of the statute was outlined by the Supreme Court in United States v. Barnow, 239 U.S. 74, 36 S.Ct. 19, 22, 60 L.Ed. 155, where the court said:

"It is the aim of the section [footnote 1] not merely to protect innocent persons from actual loss *through reliance upon false assumptions of Federal authority, but to maintain the general good repute and dignity of the service itself.* It is inconsistent with this object, as well as with the letter of the statute, to make the question whether one who has parted with his property upon the strength of a fraudulent representation of federal employment has received an adequate quid pro quo in value determinative." [Emphasis supplied.][3]

If the victim did not believe the misrepresentations, the "good repute and dignity of the service itself" would not suffer, nor would the victim have parted with anything of value in any of the situations here involved.

▮ But the state of the victim's mind, as a fact, is relevant to support another inference. The "intent to defraud" is an essential part of the crime, and the fact that the defendant, by his conduct, has created an erroneous belief in the mind of the victim, is some evidence that the defendant intended to create such an impression—that is, that he "intended to defraud". We hold, therefore, that the testimony of the victims of the alleged impersonation, that they believed the appellant to be a Government officer, were properly admitted.

▮ The second question of law involved in this case, raised by appellant's assignment of error No. 6 is: Was it prejudicial error to permit the witness Walter Camfield to testify that his mother, Laura Camfield, referred to the appellant as a detective of the F.B.I.? The testimony criticized was as follows:

"Q. Now did you ever talk to your mother about this matter of Mr. Haid? A. Naturally I would.

---

[3] 18 U.S.C.A. § 76, was amended in 1938, but the amendments do not affect or weaken the rule announced in the Littell and Barnow cases, supra.

"Q. How did she refer to Mr. Haid? A. * * * She would always refer to him as a detective of the F.B.I."

We do not decide whether or not this testimony violated the hearsay rule for at the worst, it was harmless error, and its admission could not have harmed the appellant, since Laura Camfield herself testified at the trial, and her direct testimony was to the same effect as that set out above. No objection was made to her direct testimony. That being so, the admission of Walter Camfield's testimony was not prejudicial error.

Judgment affirmed.