**John Milton PHILLIPS, Jr., Jack Cecil Cherbo and Richard Dale Walker, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 19646.**

United States Court of Appeals Ninth Circuit.

Oct. 18, 1965.

Rehearing Denied March 22, 1966.

E. F. Bernard, William E. Hurley, Bernard, Bernard & Hurley, Portland, Or., for appellant Richard Dale Walker.

W. H. Morrison, Robert R. Carney, Winfrid K. Liepe, Maguire, Shields, Morrison, Bailey & Kester, Portland, Or., for appellants John Phillips, Jr., and Jack Cherbo.

Sidney I. Lezak, U. S. Atty., Donal D. Sullivan, 1st Asst. U. S. Atty., Jack G. Collins, Asst. U. S. Atty., Portland, Or., for appellee.

Before CHAMBERS, HAMLEY and HAMLIN, Circuit Judges.

HAMLEY, Circuit Judge.

This is a mail fraud and conspiracy case involving asserted violations of 18 U.S.C. §§ 1341 and 371 (1958). The final form of the indictment contains fifteen counts charging mail fraud and one count charging conspiracy. Seven defendants were named in each count, namely: John Milton Phillips, Jr., Jack Cecil Cherbo, Richard Dale Walker, Maurice Arthur Hall, George Edward Isaacs, David Frank Koolish and Abraham Leonard Koolish. The named defendants were jointly tried before a jury. Phillips, Cherbo and Walker were convicted on all counts and join in this appeal. The other four defendants were acquitted on all counts.

Summarizing the first fifteen substantive counts relating to mail fraud, all seven defendants, in order to obtain money, by means of false representations induced various persons to purchase lots in a land subdivision called "Lake Valley," situated in Harney County, Oregon. They organized the Harney County Land Development Corporation for the purpose of acquiring, subdividing, advertising for sale and selling the land. The defendants inserted advertisements in newspapers to induce purchasers to remit five-dollar deposits together with a coupon clipped from one of the advertisements. Upon receipt of such a deposit and coupon, defendants sent back a brochure and other materials, together with a form of purchase contract. Those

executing such a contract agreed to pay minimum monthly installments of five dollars towards the purchase price.

Further summarizing those counts of the indictment, the materials sent through the mails by the defendants were intended to deceive purchasers into believing that the land comprising Lake Valley was suitable land for residential, recreational and sound investment purposes, when in truth, the land did not possess such qualities. The advertisements used included photographs depicting mountains, lakes, valleys and recreational scenes which are miles from the land offered for sale and falsely pretended to describe the land offered without disclosing that Lake Valley is vacant desert land. Also, one of the maps in the advertisement depicted a swimmer and water skier near the area offered for sale, showing the proximity of the land offered to Malheur and Harney Lakes. This was done without disclosing that those lakes are shallow desert lakes, wholly unsuitable for any purpose suggested in the advertisement because of their chemical composition, tendency to dry up, and location within a restricted compound of the Malheur National Wildlife Refuge.

These counts of the indictment charge each of the defendants with making the following false representations, knowing at the time they were made that they were false: Lake Valley is rich, fertile land and is a fertile valley; purchasers would receive "all facts" and "a complete portfolio of facts and photographs," and "all current information"; Lake Valley has "everything"; "in addition, there's boating, water skiing, golfing, swimming"; the climate has "Four exciting seasons! 300 days of warm wonderful sunshine throughout the year!"; Lake Valley is an area of booming population; purchasers would receive an official surveyor's map exactly as recorded and which is a reduction of the map on record in the Harney County Courthouse; and Lake Valley is a sound investment opportunity.

Each of the first fifteen counts, relating to mail fraud, then concludes with an allegation that the defendants caused to be placed in the mail a letter containing advertising material addressed to a particular person, a different individual being named in each count.

In the conspiracy count it is alleged that the seven defendants knowingly, wilfully and feloniously conspired, combined, confederated and agreed with each other to commit mail fraud violations of the kind described in the other counts. According to this count defendants committed some fifteen separately described overt acts in pursuance of the conspiracy.

The evidence shows that two of the appellants, Phillips and Cherbo, operated Phillips & Cherbo, Inc., an advertising agency in Chicago, Illinois. The remaining appellant, Walker, was the manager of California Valley, a land development in San Luis Obispo County, California. Each of the appellants had stock ownership in the land development corporation. Phillips and Cherbo were to develop the advertising materials which were subsequently approved by an attorney. Walker was to handle the on-site development, including surveying, engineering, road grading, preparation and recording of plats and other administrative details.

The evidence further shows that Phillips and Cherbo's advertising firm prepared a "broadside" brochure which assertedly contained many false representations concerning the quality and desirability of the tracts being offered for sale. General newspaper advertising was then prepared assertedly containing additional false representations. Those who read the advertising were invited to clip and transmit to the land company an accompanying coupon with a five-dollar deposit. In this coupon the purchaser announced his desire to own land limited to no more than five one-acre tracts per family or investor.

The evidence shows that a customer who sent in such a coupon and a five-

dollar deposit received through the mails a "sales kit" containing ten or twelve enclosures including the brochure referred to above. Among the other items enclosed in this kit was a "Lake Valley" land sale contract form. Many readers of the advertisements sent in the coupons and a five-dollar deposit, and many of those thereafter executed and returned a sales contract. If one who had returned the coupon together with a deposit failed to execute the contract, the five-dollar deposit was returned to him.

According to the evidence, advertising began in June, 1962, and continued into November, 1962. By November 14, 1962, the Oregon Real Estate Commission, the Federal Trade Commission, and the Post Office Department had commenced separate investigations of the Lake Valley promotion. The defendants had, by then, made approximately 1,394 sales. Defendants terminated the operation when the Post Office Department investigation came to their attention in November, 1962.

Appellants contend that the trial court erred in admitting into evidence certain documents assembled in exhibits 968 and 984. Exhibit 968 is a collection of ten cancellation letters from dissatisfied customers. Exhibit 984 is a group of fifty-five order coupons accompanied by special requests for lots on or near the lake. One of the letters in exhibit 968 (968–82) was read to the jury.[1] The jury was not permitted to see the remaining documents comprising these two exhibits. Instead, the trial court summarized, for the jury, the contents of the letters in exhibit 968 and the requests sent along with the coupons in exhibit 984.

Appellants first argue that the documents in these two exhibits do not constitute evidence relevant to any issue in the case.

The documents in question were received in evidence not to prove that the advertising was in fact false, but for the jury's consideration in determining whether one or more of the defendants knew that the advertising was creating a false impression in persons who might be interested in the purchase of the property.

■ In considering the problem of relevancy we bear in mind that the trial court possesses wide latitude in the determination of the relevancy or materiality of evidence and its ruling thereon cannot be reversed in the absence of an abuse of discretion. Dege v. United States, 9 Cir., 308 F.2d 534, 536.

■■ The Government had to prove, among other things, that the described transactions constituted a scheme to defraud. See Irwin v. United States, 9 Cir., 338 F.2d 770, 773. Proof that one or more of the appellants persisted in the venture after being made aware that their advertising was being misunderstood by those to whom it was directed would tend to show that such appellant or appellants were engaged in a scheme to defraud.

■ Evidence of this kind may take the form of written communications from prospective or actual purchasers, not otherwise inadmissible, complaining that the land, upon examination, did not live up to the advertising. See United States v. Press, 2 Cir., 336 F.2d 1003, 1011. So also, we think, evidence of this kind may take the form of written orders containing requests for tracts having special features or advantages not in fact available. The letters and coupons contained in exhibits 968 and 984

---

1. This letter, written by Helen M. Wood to the land company, reads as follows:
"Dear Sirs
"Sat & Sun, July 21–22nd, we spent in Burns, Oregon. A good look at the 'fertile valley' that your literature expounds upon—plus the scenic beauties, etc leaves me with only one thing to say that is fit to print—please return my money immediately. The money that I sent you was real—it was honest—it was exactly as depicted."

were of this kind, and are therefore relevant.[2]

But appellants further argue that, even if relevant, these documents were not admissible as evidence on the indicated issue because the Government failed to prove that the documents came to the attention of any of the appellants while the project was still in progress.

The principle which appellants here invoke is established in several of the cases referred to in note 2. In order to discuss this question it is necessary at this point to review the circumstances pertaining to the receipt and processing of these documents during the course of the land operation.

All of these items were sent through the mail by the prospective or actual customers, addressed for the most part to the land company which appellants and others had organized. Through that company, appellants had arranged to have this and other correspondence addressed to the land company, received and processed by the Harney County Escrow Company. This latter company was incorporated by William H. Bardwell, an attorney of Burns, Oregon, and his wife, Mrs. Betty Bardwell, for the exclusive purpose of handling these matters, escrows and paper work for the land company.

Walker set up the procedures to be followed by the escrow company in processing this mail. Mrs. Bardwell personally handled most of the incoming mail. She sent a daily report of sales and inquiries to Phillips and Cherbo in Chicago, and Walker at California Valley. Cancellations were tabulated on a daily basis and reported weekly. Cancellation letters were kept in the escrow office files in Burns.

In July, 1962, Cherbo became concerned about the number of cancellations and telephoned to Mrs. Bardwell, from Chicago, requesting her to send some of them to him. She complied, sending between forty and fifty of these letters to Cherbo on July 30, 1962. These were letters in which purchasers had given reasons for cancelling. Cherbo went through the letters in Chicago and brought them back to Burns, Oregon, when he returned there to investigate the cancellations.

Counsel for the Government stated at the trial that he was not claiming that the particular letters comprising exhibit

---

2. None of the five cases cited by appellants on this branch of the case are in point. In Farrell v. United States, 9 Cir., 321 F.2d 409, this court did not determine that the documents in question were inadmissible. We held that, even if they were, defendants had made no adequate objection thereto and therefore the error "if any" in admitting the documents did not warrant reversal. In Meyers v. United States, 9 Cir., 147 F.2d 663, the letter held to be inadmissible was sent to a post office inspector by an acquaintance of the defendant. It was not offered to show notice to defendant of any fact and had no tendency in that direction.

In St. Clair v. United States, 9 Cir., 23 F.2d 76, the trial court permitted the Government to introduce a series of letters from the Secretary of State of the State of Washington to the mining company with which the defendants were connected, Government counsel asserting that the purpose was "(t)o show knowledge." The court did not discuss the issue of notice because it found the Government's assertion to be vague and irrelevant.

In Rice v. United States, 10 Cir., 149 F.2d 601, the letter received in evidence was written to the defendant by his former salesman, charging that the defendant had made certain misstatements and misrepresentations. The letter was improperly admitted because, as the court said, it did not purport to notify the defendant of fraudulent practices by the latter's agents, but dealt only with policies and conditions with which the defendant was already aware. In our case, on the other hand, the purpose of introducing exhibits 968 and 984 was to prove that appellants had notice of something of which they might not otherwise be aware, i. e., that the advertising was being misunderstood by prospective customers. Marshall v. United States, 2 Cir., 197 F. 511, does not involve a notice issue, the letters there in question having been offered to impeach the author.

968 were among those sent to Cherbo.[3] Insofar as Cherbo is concerned, however, this circumstance is not significant in view of the fact that these letters were not shown to the jury, the court merely summarizing the purport of letters of the kind which were sent. The one exception is the Helen Wood letter quoted in note 1 above, but the purport of that letter was not substantially different from the summary which the court gave to the jury.

There is no direct evidence that Phillips or Walker had seen any letters of this kind, or that any of the appellants had seen the coupons and requests comprising exhibit 984. But their actual knowledge of these letters, coupons and requests was susceptible of proof by means of circumstantial evidence. However, before reaching the question of whether the evidence was sufficient to show appellants' actual knowledge of these communications, we consider the Government's alternative argument that appellants had constructive notice, and that this was sufficient. Specifically, the Government contends that the land company, the escrow company, and the Bardwells were co-conspirators with appellants, and that therefore receipt of the documents by Mrs. Bardwell constituted notice to each of the appellants.

Appellants counter this argument on two grounds: (1) these companies and the Bardwells may not be regarded as co-conspirators because there is no such allegation in the indictment; and (2) notice to one co-conspirator is not notice to the other conspirators for the purpose of establishing the admissibility of these documents.

■■ Turning to the second of these points, it is true that the acts of one conspirator committed during the course of and in furtherance of the conspiracy are the acts of all the conspirators. Pinkerton v. United States, 328 U.S. 640, 647, 66 S.Ct. 1180, 90 L.Ed. 1489. Also, the declarations of one conspirator in furtherance of the conspiracy, made to a third party, are admissible against his co-conspirators. Carbo v. United States, 9 Cir., 314 F.2d 718, 735.

But the Government was not here attempting to charge appellants with the overt acts or declarations of Mrs. Bardwell. It was attempting to establish an essential element of both the substantive counts and the conspiracy count, namely, that each of the defendants had a specific and actual intent to defraud.

■ Such an element may be established circumstantially. Thus a conspirator's intent to defraud may be inferred from the fact that he personally knew that the venture was operating deceitfully. But since it is the personal knowledge of the invidious fact which warrants such an inference, nothing less than personal knowledge of that fact will do to establish the fact even circumstantially. Thus so-called "constructive" notice or knowledge of a circumstance, based upon the actual knowledge of a co-conspirator, agent or employee, has no tendency, circumstantially or otherwise, to prove criminal intent.

The Government cites United States v. Press, 2 Cir., 336 F.2d 1003, as authority for the proposition that notice of complaints, brought to the attention of some members of a conspiracy, are admissible as against all members of the conspiracy for the purpose of showing intent to defraud.

Evidence of this kind was admitted in that case. But no question appears to have been raised concerning the possibility that not all of the conspirators had seen the complaints. The appellants in that case argued only that the testi-

---

3. At the time these letters were offered, the United States Attorney said:

"I don't claim that these particular letters were sent. There is evidence, however, that she made a selection of letters which had complaints in them, and some of them were sent.

"Now, the point is, or the Government's contention is, that in view of the contract between the land development company and the escrow company, and the correlation between the two operations, that the escrow company was a co-conspirator."

mony concerning these complaints was hearsay and that some of the complaints concerning which testimony had been received had not been brought to the attention of *any* of the conspirators. We do not regard Press as authority contrary to our views as expressed above.

Much more in point, we believe, is Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503. A large number of defendants were there indicted and tried for conspiracy to evade and defeat the payment of the federal taxes imposed on lottery operations. The Supreme Court ruled that while some of the conspirators personally knew that the federal taxes had not been paid, two of them, Smith and Law, did not have this knowledge. Declining to attribute to them the actual knowledge of other conspirators, the Supreme Court reversed the convictions of Smith and Law.

■■■ Accordingly, we hold that the documents comprising exhibits 968 and 984 were not admissible on any theory of constructive notice to appellants based upon actual notice to other members of the asserted conspiracy.[4]

The Government alternatively contends, however, that if the documents in question are not admissible on the theory of constructive notice, they are in any event admissible because the jury could have found that each of the appellants had actual notice of the documents.

Appellants argue that there was no substantial evidence which would have warranted such a jury finding as to any of the appellants. But they also argue, that, in any event, the instructions given

by the trial court did not leave to the jury the initial question whether any of the appellants had any knowledge of the letters and requests. In its brief the Government makes no response to this latter argument.

Exhibit 984, containing the coupons and accompanying requests, was admitted in evidence prior to the admission of exhibit 968, containing the cancellation letters. Out of the presence of the jury the court ruled that exhibit 984 would be admitted "provisionally." The court did not at that time give the jury any instruction concerning the circumstances under which the jury could consider it.

On the next day the court, in the presence of the jury, admitted exhibit 968 "provisionally," and then proceeded to explain to the jury what the court meant by that term.[5] As the quoted instruction indicates, the jury was told at that time, in effect, that the letters comprising exhibit 968 were to be considered by the jury only to the extent that any defendant had notice of such complaints. The court did not specify that it had to be actual as distinguished from constructive notice, and, as before stated, that instruction in any event applied only to exhibit 968.

The only other instruction to the jury concerning either of these exhibits was given at the close of the case immediately preceding the formal instructions. The court told the jury that exhibits 968 and 984 "have been withdrawn from evidence." In lieu of the acceptance in evidence of these exhibits, the court stated, it would make a statement to the jury summarizing the assertions,

---

4. We therefore need not consider appellants' further contention that the land company, escrow company, and the Bardwells may not be regarded as co-conspirators because there is no such allegation in the indictment.

5. The court told the jury:
 "By that, members of the jury, I mean anything that is stated in the letters in this particular exhibit is not to be considered by you as to the truth of the statements therein made, in that

those persons are not here for cross-examination. They are to be considered by you only as to the question of any more of these defendants, if any, having notice of any complaints that might have been made with reference to the particular property here in question [sic]. Only for that purpose may they be considered. It is not to be submitted to you now. The Court will clean up the exhibit further before it is actually submitted to you.

charges and impressions contained in the letters and requests contained in these exhibits. It then proceeded to do so.[6]

The trial court then told the jury that the assertions, charges and impressions expressed in those communications are not to be considered as evidence of such charges. The jury was told that their contents had been summarized by the court:

" * * * only in connection with your consideration of whether one or more of the defendants knew that the advertising material might be creating a false impression in persons who might be interested in the purchase of the property as advertised.

"Of course, these impressions are not to be considered by you unless and until the Government has proved beyond a reasonable doubt the existence, if any did exist, of the alleged scheme as mentioned in the indictment, and then only as to those persons, if any, who arranged and participated in the scheme, if any."

As the above-quoted portion of this instruction indicates, the jury was told that it should consider these impressions only in connection with the jury's consideration of whether one or more of the defendants "knew" that the advertising material might be creating a false impression. The court, however, did not explain that this would have to be actual knowledge based upon substantial evidence that a particular defendant knew of these letters or requests while the venture was still in progress. Un-

der the instruction given, the jury could have attributed knowledge to one or more of the appellants concerning the documents, because another appellant, or an acquitted defendant, or the land company, escrow company, or the Bardwells (who were not defendants) had actual knowledge of such documents.

The last paragraph of the quoted portion of this instruction telling the jury that it is not to consider the court's summarized impressions "unless and until" the Government proves the existence of the alleged scheme and then only as to those persons, if any, who arranged and participated in the scheme, does not fill this void. This part of the instruction says nothing concerning the necessity of the Government's showing that individual defendants had actual knowledge of the particular communications included in exhibits 968 and 984.[7]

It might possibly be argued (although the Government has not done so) that this last paragraph of the quoted instruction rendered the admission of exhibits 968 and 984 harmless error. The reasoning here would be that if the jury could not, as that paragraph advises, consider the summarized impressions against any defendant "unless and until" the Government had independently proved that such defendant had arranged and participated in the scheme, the impressions were, at most, cumulative evidence on a factual issue concerning which the jury must have already found against such defendant.

 But it is asking too much of the jury, and of the three little words

6. In stating that these exhibits had been "withdrawn from evidence," the court apparently meant only that, while retained in evidence, the jury would not be permitted to see them. If exhibits 968 and 984 had actually been rejected as evidence, the trial court would have had no basis for summarizing their contents in his instruction to the jury.

The court made no specific reference to exhibit 968–82, the Helen M. Wood letter which had already been read to the jury. Accordingly, the jury was not told to disregard the actual wording of that letter.

7. Since the only purpose for which these exhibits were offered was to show that the individual defendants had knowledge of and participated in a fraudulent scheme, a requirement that the jury must, before considering the exhibits, find on independent evidence that the individual defendants arranged and participated in the scheme seems anomalous. As to this the comments in Carbo v. United States, 9 Cir., 314 F.2d 718, 735–737, although dealing with proof of the existence of a conspiracy, are pertinent.

"unless and until," to expect the jury to understand, from that paragraph of the instruction, that it must not consider the summarized impressions unless it has already decided, against appellants, the very factual issue which gives those impressions relevance. Where documents are admitted on the theory that a defendant's actual knowledge of them shows that he must have realized the scheme was fraudulent, the jury should be told in plain and direct language, that such documents may be considered only if it has been independently shown that such defendant had actual knowledge of the documents while the asserted scheme was in progress.[8]

It is not surprising that no instruction of this kind was given in this case,[9] or that the trial court did not make the preliminary determination of admissibility referred to in note 8. At the trial the Government did not contend that any of the defendants had actual knowledge of any of the letters and requests contained in exhibits 968 and 984. Nor did it seek admission of the exhibits on that ground.[10] Moreover, the trial court admitted these exhibits in evidence only on the theory of constructive notice.[11]

In view of the fact that no appropriate instruction was given on the subject of actual notice and, indeed, that the exhibits in question were not offered and received on such a theory, it is not now open to the Government to contend, alternatively to its constructive notice theory, that exhibits 968 and 984 were admissible because the jury could have found that each of the appellants had actual knowledge of them.

■ We therefore hold that the court erred in admitting these exhibits.[12]

Appellants argue that the evidence was insufficient to sustain the verdicts as to any of them, and that the trial court therefore erred in denying their motions for judgment of acquittal.

■ The record indicates that there is ample admissible evidence to find appellants guilty beyond a reasonable

---

8. Where this is the theory upon which documents are admitted, the trial court should also, at the time the documents are offered in evidence, make a preliminary determination as to whether there is prima facie evidence showing such actual knowledge. Lacking such prima facie showing, the documents should not be admitted. No such preliminary determination was made in this case.

9. Appellants did propose such an instruction. Although they conceded that the trial court's instruction fairly summarized the contents of the documents, they made timely and adequate objection to the court's failure to give an instruction such as they had proposed.

10. See note 3, above.

11. Just before the Government rested its case, appellants moved that exhibits 968 and 984 be stricken because it had not been shown that any of the appellants had actual knowledge of any of the documents. In denying the motion, the trial court stated that the evidence showed that "some" of the defendants were in charge of the escrow office and that some of the letters were specifically addressed to "some" of the defendants.

There were seven defendants and the court did not indicate whether it included any of the three appellants among the "some" defendants to which the court referred. Examination of the documents contained in these two exhibits demonstrates that none of the letters and requests were addressed to any of the appellants. Only three of the ten letters in exhibit 968 were addressed to any defendant, these being addressed to Hall, who was acquitted. None of the requests contained in exhibit 984 were addressed to any defendant in this case.

While the instructions to be given at the close of the case were under discussion counsel for defendants sought to escape the constructive notice theory adopted by the court by pointing out that whereas appellants organized the land company, the escrow company which maintained these communications in its files, was an entirely separate corporation. In view of the interrelationship between the two corporations, however, the trial court declined to draw a distinction between them. (Rep.Tr. 1477–1478)

12. This renders it unnecessary to consider appellants' further argument that the Government's alternative theory is without merit because the evidence was insufficient to prove that each appellant had actual knowledge of these documents.

doubt. The court, therefore, did not err in denying these motions.

Since the case must be remanded for a new trial we will discuss other questions raised on this appeal which would probably again be presented on a new trial.

Appellants contend that, even if otherwise admissible, the documents comprising exhibits 968 and 984 were inadmissible, and objections thereto should have been sustained, because they do not constitute business records within the meaning of 28 U.S.C. § 1732 (1958) as amended, 28 U.S.C. § 1732 (Supp. IV 1961), and they were not otherwise authenticated.

At least as to the letters comprising exhibit 968, appellants are correct in asserting that these communications do not constitute business records within the meaning of section 1732. They were not made in the regular course of the business of the company in whose files they were found—a showing which must be made to give application to the Business Records Act. Instead, they were letters, written by outsiders, addressed to the land company and, in three instances, to defendant Hall.[13]

However, in view of the limited purpose for which these communications were admitted, it is immaterial that section 1732 could not be invoked. The purpose of that section is to provide, in the case of business records, an exception to the hearsay rule, and to provide an acceptable substitute for specific authentication of each such business record. We are not here concerned with the hearsay rule because the letters and requests contained in exhibits 968 and 984 were not offered in proof

of the statements therein contained. They were introduced only to show that the defendants had knowledge that such statements had been made. Nor are we concerned with authentication since the authenticity of documents need not be established where the only purpose of the documents is to show notice. See People v. Marsh, 58 Cal.2d 732, 26 Cal. Rptr. 300, 376 P.2d 300, 305.

Appellants argue that the trial court erred in receiving over objection, the testimony of twenty-five tract purchasers as to the impressions they received from the sales materials sent to them by appellants. In each instance, the testimony was to the effect that the witness gained the impression at the time of reading the literature that the tracts offered for sale had advantages which in fact they did not possess.

Appellants contend that reception of this testimony violated the opinion evidence rule. Their reference is to the rule that a witness should not ordinarily be allowed to express an opinion upon a subject matter concerning which he is not an expert, or where the subject matter is non-technical in nature. See Cohen v. Western Hotels, Inc., 9 Cir., 276 F.2d 26, 27; 7 Wigmore, Evidence (3rd ed. 1940) § 1924, page 22.

It is beyond dispute that the twenty-five witnesses in question were not experts, or held out as experts, concerning the subject matter of their testimony—impressions gained from reading sales materials. Nor is it claimed that the subject matter of that testimony is technical in nature.

But the rule which appellants invoke is nevertheless inapplicable because the testimony in question was not opinion testimony at all. These wit-

---

13. See Standard Oil Company of California v. Moore, 9 Cir., 251 F.2d 188, 213–214; Cromling v. Pittsburgh and Lake Erie R.R. Co., 3 Cir., 327 F.2d 142, 147. The Government's reliance upon Bisno v. United States, 9 Cir., 299 F.2d 711, 718, is misplaced. The documents there in question were copies of outgoing correspondence.

For the reasons stated next in the opinion we need not decide whether received orders and accompanying directions, acted upon by a company as bona fide orders, in which category the exhibit 984 communications may have fallen, are in effect adopted by the company as its business records.

nesses were testifying only as to an issue of fact, namely their state of minds after reading the literature and before acting to purchase tracts. The state of a victim's mind at a previous point in time is not the expression of an opinion within the meaning of the rule referred to by appellants. This is nonetheless true where the state of mind necessarily evinces an opinion formulated by that person at that previous point in time. See Haid v. United States, 9 Cir., 157 F.2d 630, 632.[14]

The real problem concerning the reception of this testimony is whether the trial court erred in ruling that the state of mind of each of these witnesses, after reading the sales literature and before purchasing a tract, is a relevant issue in the case.[15]

As before stated, the Government was required to show that each of the appellants knew of and participated in a scheme to defraud. Evidence that appellants' sales materials did in fact deceive persons to whom it was directed, causing them to rely upon it, tends to show that such materials were of the nature charged. See Linden v. United States, 4 Cir., 254 F.2d 560, 566.[16]

Appellants concede that testimony by purchasers to the effect that they relied upon the sales materials in purchasing tracts was admissible. Much testimony of this kind was received, and without objection. In giving their impressions gained from reading these materials, and before making these purchases, the witnesses were merely explaining why they relied upon this literature. To each of

---

14. Appellants seek to distinguish Haid on the ground that the issue concerning which the questioned testimony was there received was whether the witnesses had relied upon the representations. They assert that the testimony here in question was not introduced for that purpose, but merely to establish the fact that the sales materials were false and fraudulent. But this argument goes to the relevancy of the testimony, not to whether it constituted opinion evidence by a non-expert on a non-technical matter. The question of relevancy is to be discussed next in this opinion.

The fact that the testimony of these twenty-five witnesses was introduced, not as an expression of their present opinions, but as an indication of their previous states of mind after reading the sales literature, serves to distinguish this case from the following decisions cited by appellants: Simmons v. United States, 92 U.S.App.D.C. 122, 206 F.2d 427; Wesson v. United States, 8 Cir., 164 F.2d 50; Coca-Cola Co. v. Joseph C. Wirthman Drug Co., 8 Cir., 48 F.2d 743; and In re Cruson's Estate, 189 Or. 537, 221 P.2d 892, 20 A.L.R.2d 219.

15. The trial court did not expressly so rule, but such a ruling is implied from its determination to receive the evidence. For that matter, appellants did not object to this testimony on the express ground of lack of relevancy, but such an objection is implied from the reasons they presented to the trial court in support of the objection that this was inadmissible "opinion" testimony.

16. Appellants challenge the applicability of Linden on various grounds. It is true that Linden was concerned with another facet of the opinion evidence rule, namely, whether opinion testimony may be received as to the principal issue in the case. It is also true that the questions which were asked did not call for the witnesses' impressions upon first reading the sales literature, but involved such inquiries as: "Why did you make the payment?" or, "Why did you approve the payment?" But we do not believe these differences affect the applicability here of the ruling there made. That ruling was as follows (254 F.2d at 566):

"Proof that the scheme was effective should not be excluded as irrelevant. While it is true that the success of a scheme is not a necessary element of the crime defined in the Mail Fraud statute, nevertheless where, as here, the indictment charges the defendant with making captious, deceptive, and misleading solicitations, the effect of the solicitations upon the recipients is a highly pertinent fact in determining whether the solicitations are of the nature charged."

This language from the Linden decision was quoted with approval in another mail fraud and conspiracy case which reached this court, although in the latter case the testimony in question and the issue to which it was directed were different than in the case now before us. See Farrell v. United States, 9 Cir., 321 F.2d 409, 418–419.

them the brochure depicted certain advantages they were interested in and therefore, in reliance upon the literature and the impressions thus gained from them, they made the purchase.

■ Evidence showing the reason why a victim relied upon a particular representation is relevant because it tends to support the victim's bald assertion that he did rely.

In Haid v. United States, 9 Cir., 157 F.2d 630, 632, where a showing of reliance on the pretense was essential to the Government's case, the victim's testimony as to his state of mind when confronted with the pretense on which he relied was held to be relevant. The same principle is applicable where, as here, the Government was not required to show reliance, but it was nevertheless a concededly relevant issue bearing upon the question of whether there was a scheme to defraud.

In Linden, supra, which was a mail fraud case, a dozen recipients of certain forms sent out by the defendants testified that they remitted checks to the defendants in the belief that the papers they had received were invoices for their previously ordered advertising in a classified telephone directory. In principle, this is no different than the testimony of witnesses in our case that they purchased tracts after reading sales literature which led them to believe that the offered property had certain qualities in which they were interested. See also United States v. Baren, 2 Cir., 305 F.2d 527, 534.

■ We hold that the trial court did not abuse its discretion in determining that the so-called impression testimony was relevant under the circumstances of this case. Nor do we find any merit in appellants' argument that reception of this evidence deprived them of due process of law under the Fifth Amendment.

Appellants argue further that this testimony was unreliable and misleading, and that in obtaining it the Government asked many leading questions.

■ The reliability of testimony is a matter for argument before the jury, and for the jury's ultimate determination. The Government did ask many leading questions. Most objections on this ground were sustained when made, and on a new trial the Government may be expected to desist from this practice.

Appellants contend that the district court erred in allowing witnesses to testify as to the price of the property in its raw, undeveloped state. The question raised by appellants is whether this testimony is relevant to the issues.

■ An issue existed as to whether the land was good for anything but the grazing of cattle. Thus, in case the jury found that the use of the land was so limited, the evidence of the value of the land in its unimproved state would be relevant. The trial court did not abuse its discretion in admitting this testimony.

Reversed and remanded for a new trial.

CHAMBERS, Circuit Judge (concurring).

I concur in the foregoing opinion and in Judge HAMLIN's concurrence, post.

HAMLIN, Circuit Judge (concurring).

I concur in the foregoing opinion. I feel that there was ample evidence in the case to justify the jury's finding of appellants' guilt. I reluctantly concur in the reversal, however, because there may be merit in the contention that the given instructions on the question of notice and the failure of the court to give the instructions offered by the appellants on the same subject could be said to have been prejudicial to the appellants.