Samuel **REISMAN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Joseph J. **BYRNES**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Nos. 21782, 21782–A.

United States Court of Appeals
Ninth Circuit.

April 9, 1969.

Rehearings Denied May 12, 1969.

Clarence S. Hunt (argued), of Ball,
Hunt, Hart & Brown, Long Beach, Cal.,
for Reisman.

Earl P. Willens (argued), of Buchalter, Nemer, Fields & Savitch, Los Angeles, Cal., for Byrnes.

David R. Nissen (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., Doris R. Williamson, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before BARNES, HAMLEY, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

Appellants were convicted under 18 U.S.C. § 1341 of using the mails for the purpose of executing a scheme to defraud in connection with the subdivision and public sale of portions of the "Gamble Ranch" in Nevada. The pattern disclosed by the evidence is similar to that involved in two other cases recently before this court: Phillips v. United States, 356 F.2d 297 (9th Cir. 1965); and Windsor v. United States, 384 F.2d 535 (9th Cir. 1967).

Appellants' principal contention is that reversal is required because complaint letters from disgruntled customers were used against the appellants in a way prohibited by the *Phillips* decision.

*Phillips* held that complaint letters alleging misrepresentation are relevant to show that a defendant had a specific intent to defraud because such an intent may be inferred from the defendant's continued participation in a promotional venture after he has learned that the representations being made are misleading customers. However, as the court pointed out:

"* * * since it is the personal knowledge of the invidious fact which warrants such an inference, nothing less than personal knowledge of that fact will do to establish the fact even circumstantially. Thus so-called 'constructive' notice or knowledge of a circumstance, based upon the actual knowledge of a coconspirator, agent or employee, has no tendency, circumstantially or otherwise, to prove criminal intent" (356 F.2d at 303).

Accordingly, the court held, complaint letters are not admissible "on any theory of constructive notice to appellants based upon actual notice to other members of the asserted conspiracy" (304).[1]

Moreover, since such documents are relevant *only* on the theory that a defendant's actual knowledge of them shows that he must have realized the scheme was fraudulent, they should be admitted only after a preliminary determination by the trial court that there is a prima facie showing of actual knowledge (*Phillips*, 356 F.2d at 306 n. 8); and "the jury should be told in plain and direct language that such documents may be considered only if it has been independently shown that such defendant had actual knowledge of the documents while the asserted scheme was in progress." *Phillips*, 356 F.2d at 306.

We must agree with appellants that the constructive notice theory rejected in *Phillips* was applied in this case. Complaint letters were admitted as establishing notice to all the defendants of the misleading effect of Gamble Ranch advertising wherever it appeared that the letters had come to the attention of any one of the defendants or any of the employees or agents of the Gamble Land Company, including its attorney.[2]

1. *See also* Jefferson v. United States, 340 F.2d 193, 198 (9th Cir. 1965).

2. For example, in admitting complaint letters handled by the company's attorney, the trial court said:

"THE COURT: [T]he whole question is whether the attorney is an agent of the Company and when the Company employs him to answer complaints, it seems to me they [the individual defendants] are bound by the notice he receives of the complaint.

* * * * * *

THE PROSECUTOR: * * * in the Company there were numerous office workers * * * and these people, their acts are certainly attributable to the people higher up in the Company, and they were all admitted purely on that simple basis.

THE COURT: I think so.

THE PROSECUTOR: They are offered by us, your Honor, to show number one, that the statement was made

■ The government argues, as it did in *Phillips*, that there was direct and circumstantial evidence from which the jury could have found that each appellant had actual knowledge of the complaint letters.[3] The trial court did not make a preliminary determination of the existence of such evidence as required by *Phillips*. In any event, as we pointed out in *Phillips*, the mere presence of such evidence is insufficient in the absence of a clear instruction that actual personal knowledge was required, because the jury may have based its verdict upon the actual knowledge of others imputed to the appellants. 356 F.2d at 304–305.[4]

Appellants objected to the introduction of the letters, but not on the ground articulated in *Phillips*. They did not request the trial judge either to make the preliminary determination or to give the instruction which *Phillips* requires. Nor did they object to the instructions which were given. The question presented, therefore, is whether these deviations from the principles applied in *Phillips* should be noticed by this court as "[P]lain errors or defects affecting substantial rights * * *." Fed.R.Crim.P. 52(b).

■ Rule 52(b) and the cases applying it avoid the imposition of detailed standards for the identification of errors "affecting substantial rights". The language of the rule implies, and the cases hold, only that while orderly administration of justice requires general adherence to the rule that errors be asserted in the trial court, exceptions must be recognized in unusual circumstances involving seriously prejudicial deficiencies in the trial process. "The plain error doctrine recognizes the need to mitigate in criminal cases the harsh effect of a rigid application of the adversary method of trial, whereby the attorney's conduct binds his client." 8A Moore's Federal Practice 52–4 (1968). "The Rule is in the nature of an anchor to windward. It is a species of safety provision the precise scope of which was left undefined. Its application to any given situation must in the final analysis be left to the good sense and experience of the judges." *Herzog v. United States*, 235 F.2d 664, 666 (9th Cir. 1956).

There was little dispute as to the facts at trial. Appellants' principal defense was that they did not intend to deceive; and this issue was hotly contested. The trial judge expressed the view that the jury would have difficulty in resolving it. The jury requested that the "instructions on misrepresentation and intent" be reread; and required some thirty hours of deliberation, over a period of four days, to reach its verdict.

As we have said, in deciding the critical issue of intent, the jury was erroneously permitted to assume that each of the appellants had knowledge of numerous letters complaining of misrepresentations because such letters were found in the company files or were known to persons other than defendants connected with the enterprise. The content of these letters was extremely damaging. Hundreds of them were admitted; many were read to the jury. All were sent to the jury room, and the prosecutor urged the jury to examine them and give them weight.

■ On this record, we "cannot say, with fair assurance, * * * that the

to the Company and therefore they had notice a complaint was made.
THE COURT: That is right.
THE PROSECUTOR: That is the reason.
THE COURT: They had notice of the complaint."

3. Direct proof of actual knowledge by the two appellants was limited to a scattered few complaint letters. Hundreds of such letters were admitted against them as showing constructive notice.

4. Similarly, the prejudice resulting from allowing the jury to consider the letters as establishing constructive notice is not diminished by the fact that some of the letters, as the government argues, may have been admissible for various other purposes unrelated to the defendants' knowledge that customers were being misled.

judgment was not substantially swayed by the error." Since it is "impossible to conclude that substantial rights were not affected" (Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)), reversal is required.[5]

Prior to trial, appellants moved for an order permitting inspection of the grand jury transcript on the general ground that inspection was necessary to adequate trial preparation. The court denied the motion. Appellants do not contend that they met the "particularized need" requirement of Dennis v. United States, 384 U.S. 855 (1966). Instead, they ask us to re-examine and reject the policy of secrecy of grand jury proceedings underlying that requirement and reflected in the provisions of Fed.R.Crim. P. 6(e). Appellants must address their request to higher authority.

We also decline to decide the merits of appellants' contention, based upon the line of authority represented by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), that they were denied due process by the trial court's ruling that the government need not produce certain documentary material in its possession which appellants argue may have contained information useful to the defense. The constitutional issue which appellants ask us to decide may not arise on remand. If it does, the factual context in which it is presented may differ materially from that disclosed in the present record.

We think it unnecessary to consider in detail appellants' contention that various trial incidents, taken together, constituted prejudicial prosecutorial misconduct which denied them a fair trial. Appellants' charge of misconduct is clearly unjustified, and the specific incidents upon which they rely are not likely to recur.[6]

Finally, appellant Reisman contends that he was improperly convicted on a number of counts based upon mailings by other participants in the promotional scheme occurring either before he joined in the scheme or after he had withdrawn from it. See Levine v. United States, 383 U.S. 265, 86 S.Ct. 925, 15 L.Ed.2d 737 (1966).

"Once the existence of the common scheme is established, very little is required to show that defendant became a party" (Hernandez v. United States, 300 F.2d 114, 121–122 (9th Cir. 1962)); and we have no hesitancy in holding that the evidence was sufficient to support the jury's determination that appellant had become a participant in the scheme at the time of the earliest mailings for which he was convicted.

The case is perhaps less clear as to the mailings which occurred after the time at which appellant asserts he withdrew from the enterprise. However, the scheme charged was a continuous one, and each participant in a continuing

5. When substantial prejudice appeared, convictions have been reversed under Rule 52(b) where inadmissible evidence was received and the jury was instructed that it might be considered (United States v. Readus, 367 F.2d 689 (6th Cir. 1966)); evidence admissible for a limited purpose was received without a limiting instruction (Upham v. United States, 328 F.2d 661 (5th Cir. 1964); Bartley v. United States, 115 U.S.App.D.C. 316, 319 F.2d 717 (1963); Naples v. United States, 120 U.S.App.D.C. 123, 344 F.2d 508, 511–513 (1964)); evidence admissible against only one of several defendants was received without a limiting instruction (Cleaver v. United States, 238 F.2d 766, 770 (10th Cir. 1956)) and the jury was permitted to base a finding of specific intent upon imputed rather than actual knowledge (Jefferson v. United States, 340 F.2d 193, 197 (9th Cir. 1965)).

6. Appellants draw inferences from comments and questions of the prosecutor which, in our opinion, are not justified by the record. Other incidents reflect inadvertent acts and omissions inevitable in a hard fought and protracted trial. In some instances, appellants did not object to the conduct now complained of; in others, objections were sustained and adequate cautionary instructions were given.

scheme is bound by the acts of his confederates "until he does some act to disavow or defeat the purpose" of that scheme. Hyde v. United States, 225 U.S. 347, 369, 32 S.Ct. 793, 803, 56 L.Ed. 1114 (1912). Although appellant Reisman resigned as president and director of the Gamble Land Company and ceased to participate in the company's day-to-day business operations, he remained a major stockholder and took no affirmative action to disavow or defeat the promotional activities which he had joined in setting in motion. We think more was required to terminate his liability for the continuing conduct of his confederates.

Reversed and remanded.