Lewis CHATMAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 23146.

United States Court of Appeals
Ninth Circuit.

May 28, 1969.

Ollie Marie-Victoire (argued), San Francisco, Cal., for appellant.

John G. Milano (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before BROWNING and DUNIWAY, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Appellant was charged in three counts with the sale of cocaine on October 24, 1967, October 25, 1967, and November

* Honorable William J. Jameson, United States Senior District Judge, Billings, Montana, sitting by designation.

7, 1967, respectively, in violation of 26 U.S.C. § 4705(a). In a jury trial he was acquitted on Count I and convicted on Counts II and III. A sentence of five years was imposed on each of the two counts, to run concurrently.

Appellant urges as error (1) failure of his retained trial counsel to (a) rely upon the defense of entrapment and (b) offer instructions or object to those given; (2) failure of the trial court to (a) direct a verdict of acquittal on the ground that entrapment was established as a matter of law or (b) instruct the jury on entrapment; and (3) misconduct of the prosecutor in his closing argument.

George Heard, a federal narcotics agent, testified that he first met appellant on October 24, 1967, when he went to appellant's home, following a telephone call in which an informant, Otis Warren, asked someone called "Little Brother" if "he had the things they were talking about earlier" and said that he had a friend who wanted to make a purchase. Upon arriving at appellant's apartment, Heard told appellant he had come to pick up the package Warren had called about. Appellant gave Heard five balloons containing a quantity of cocaine, for which Heard paid him $100.[1]

Heard testified further that he returned unannounced to appellant's apartment the following day, and appellant sold him another five balloons containing cocaine for $100. On this occasion appellant asked Heard if he liked the package he had purchased the previous day. He wrote his telephone number on a slip of paper and told Heard to identify himself as "Big Man" and ask for "Little Brother".

Heard made his third purchase on November 7, when he called from his office, identifying himself as "Big Man" and asking for "Little Brother". In this telephone conversation he discussed the possibility of purchasing an ounce of cocaine for $750. Chatman replied that he only had the "usual amount" in his possession, that he could get an ounce of cocaine, but would have to contact "his people" early in the morning to get such an amount. Calling back a few minutes later, Heard told appellant he could not afford the ounce but would "take the usual $100 worth". Heard then went again to appellant's apartment and purchased another five balloons containing cocaine for $100.

■ On cross-examination Heard testified that informant Warren had previously worked for him and at the time he commenced such work there was a case pending against him. Warren was not called as a witness by either party.[2]

The substance in the various balloons was identified as cocaine by an expert chemist.

Appellant testified that he had known Warren about eight months; that in October, 1967, Warren brought to appellant's home a package consisting of a plastic bag containing some balloons sealed together and asked appellant to keep the package for him, stating that he and his wife had had a quarrel; that about three days later, Warren called saying a "guy would pick up a package and leave $100 for five balloons".

Thereafter, according to appellant, agent Heard, whom he had not seen before, came to appellant's apartment with Warren, who introduced appellant to Heard, and the exchange of money and the five balloons took place. Appellant testified further that on October 25 Warren left five more balloons, which

---

1. Heard's testimony regarding the first call was partially contradicted by that of his fellow agent. The agent testified that he had maintained surveillance outside the apartment on October 24 and 25 and that on October 24 Heard was accompanied by the informant, Otis Warren.

2. The failure of the Government to call an informant as a witness does not necessarily violate the defendant's rights. All the Government need do is to identify its informant; it need not produce him as a witness at the trial. Wilson v. United States, 9 Cir., 409 F.2d 184, decided Mar. 13, 1969, and cases there cited.

were picked up by Heard, and that Warren returned later and picked up the money. A similar procedure was followed on November 7, Warren supplying the balloons and receiving the money.

According to appellant, the balloons were at all times closed, he observed no white powder, he had never used cocaine, had never sold balloons to anyone except Heard, and did not receive any of the money from the sales to Heard.

 Appellant's trial counsel, an experienced attorney, relied upon the defense of appellant's lack of knowledge that he was consummating the sale of a narcotics drug rather than upon the defense of entrapment.[3] Appellant denied that he had committed the offense charged—not that he knowingly sold the cocaine, but was induced to make the sales by a Government agent. There is no substantial evidence that he was improperly induced to make the sales. On the contrary, the evidence of Agent Heard indicates that appellant acted freely and voluntarily and "was ready and willing without persuasion * * * to commit the offense". United States v. McMillan, 2 Cir. 1966, 368 F.2d 810, 812, cert. denied 386 U.S. 909, 87 S.Ct. 856, 17 L.Ed.2d 783. The mere fact that a Government agent affords the opportunity and facilities for the commission of an offense does not in itself constitute entrapment.

 It is true of course that "a failure to request an instruction on en-

trapment or a failure to object to its omission forecloses the right to object on appeal". Smith v. United States, 9 Cir. 1968, 390 F.2d 401, 402. Under appellant's testimony and the theory on which the case was tried, there was no reason for appellant's trial counsel to request an instruction on entrapment. His failure to do so does not indicate inadequate or incompetent representation of appellant.

 Viewing the evidence in the light most favorable to the Government, it is clear that the defense of entrapment was not established as a matter of law and that the failure of the trial court to give an instruction on entrapment did not constitute plain error.[4]

We find no error in the court's instructions. While counsel for defendant did not offer any special instructions, the instructions were discussed fully by court and counsel prior to argument, and the instructions given were fair to both parties and set forth the applicable law.

Nor do we find support for appellant's contention that his retained trial counsel was "grossly inept" in other respects. From an examination of the entire record we conclude that appellant was adequately and competently represented by his trial counsel.

Finally appellant claims prejudice in the comments of the prosecuting attorney in his summation to the jury. The challenged statements are set forth in the footnote.[5] No objection was made to

3. In counsel's opening statement, he told the jury that the evidence would show that the defendant "at no time ever knew what was in those balloons, * * * that at no time did he keep any of the money" and that he was simply used as "a depository for Otis Warren and an intermediary for the Federal Narcotics Bureau". The case was tried and argued on this defense, and the defendant was acquitted on the first count.

4. As this court said in Smith v. United States, supra, 390 F.2d at 403, "There is no evidence that the informant (here agent) pleaded or argued with the defendant to sell him the heroin. It is evident that, under any theory, entrapment

had not been put in issue, and certainly had not been shown as a matter of law. The defendant was not entitled to such instruction and the failure to give the instruction does not constitute plain error". See also Wilson v. United States, supra, n. 2, and cases there cited.

5. " * * * The fact that a defendant has that right to put the government to its burden, to say 'I'm not guilty until a jury concludes that I am,' doesn't include the right of a defendant to take the stand, to be sworn, and then to tell the jury a pack of lies.
" * * * I would suggest that just from what you heard from the defendant alone you just couldn't possibly believe

the allegedly improper statements. They were made in the prosecutor's opening argument and answered by appellant's counsel. The court instructed the jury that "* * * the statements and the arguments of counsel are not evidence * * *".

Appellant argues that the remarks are prejudicial within the rule set forth in Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314, where the Court said in part: "The United States Attorney * * * may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones". The Court held that misconduct of a prosecutor which is "pronounced and persistent", particularly in a weak case, affords ground for reversal.

▆▆▆ Here there was no "pronounced" or "persistent" misconduct as in Berger. While some of the remarks of counsel may have been injudicious, they do not constitute prejudicial misconduct. The "reliability of testimony is a matter for argument before the jury, and for the jury's ultimate determination". Phillips v. United States, 9 Cir. 1965, 356 F.2d 297, 309, cert. denied Walker v. United States, 384 U.S. 952, 86 S.Ct. 1573, 16 L.Ed.2d 548. The remarks of counsel were directed to the evidence in the case, and particularly to discrepancies and contradictions in appellant's own testimony, and were not based upon any personal knowledge of the attorney apart from the evidence.

what he told you and what he asks you to believe.

"He asks you to believe that, given a circumstance and the kind of person that he is, the kind of life that he leads, a sort of activity that he engages in to make his living, he asks you to believe that, nonetheless, he is so innocent and so naive that he took these things from Otis Warren, participated in this entire event, turned all the money over to Otis Warren and really didn't know what was going on.

"* * * You know, I am sure, that the potential of what seems to me a great deal of powder there is horrible, that the drug traffic, in its every aspect, from start to finish is an abomination.

See Orebo v. United States, 9 Cir. 1961, 293 F.2d 747, 749, cert. denied 368 U.S. 958, 82 S.Ct. 402, 7 L.Ed.2d 389.

▆▆▆ Counsel's comment "that the drug traffic, in its every aspect, from start to finish, is an abomination" was not prejudicial error. As this court said in Tenorio v. United States, 9 Cir. 1968, 390 F.2d 96, 99, cert. denied 393 U.S. 874, 89 S.Ct. 169, 21 L.Ed.2d 145: "Counsel are entitled to a reasonable degree of latitude in the presentation of argument" and a comment of this nature contains "nothing more than that which is within the common knowledge of all reasonable people".

Finding no error, we affirm.

▆▆▆▆▆▆▆▆▆▆▆▆

"* * * If you think that the story told you is a reasonable one, a true one, the real version of the facts, by all means acquit him. Find him not guilty.

"But if you find that he has taken advantage of his rights to put the government to its proof and that he has instead taken the stand and attempted to simply sell you a complete barrel of hogwash, then I ask you to reject it in its entirety and to arrive at the only logical alternative, the alternative that the defendant is, in fact, guilty of each and every charge alleged in the indictment, if you are convinced of this beyond a reasonable doubt."