**David Lujan SABLAN, Appellant,**

v.

**PEOPLE OF the TERRITORY OF GUAM, Appellee.**

No. 25255.

United States Court of Appeals, Ninth Circuit.

Nov. 17, 1970.

James B. Klemm, Walter S. Ferenz, of Barrett, Ferenz & Bramhall, Agana, Guam, for appellant.

James S. Brooks, Frank G. Lujan, Atty. Gen., James H. Allendoerfer, Lawrence J. Teker, Asst. Attys. Gen., Agana, Guam, for appellee.

Before CHAMBERS and KOELSCH, Circuit Judges, and BYRNE, District Judge *.

BYRNE, District Judge:

David Lujan Sablan has appealed his second-degree murder conviction imposed upon him by the District Court for the Territory of Guam. Sablan was indicted for the 4th-of-July murder of a young soldier, Thomas R. Lemon, Jr., shot to death while standing in a saloon.

The evidence presented to the jury was that Sablan and a friend had visited the tavern (Carmen's Place) two days before the killing and that Sablan had been refused service by the bar's management at that time. On American Independence Day, Sablan met David Torres at a small roadside store. Torres was carrying a .45 caliber pistol in his pantwaist. Later on, Sablan and Torres joined two more friends in Torres' automobile. There was testimony that while driving about, Sablan suggested to the others: "Let's go shoot up Carmen's Place."[1]

Two of the companions not charged as accomplices to the murder (Joseph Evaristo and Jesse Perez) testified at the trial that Sablan and Torres conceived of a plan to attack Carmen's Place. In essence, the plan was that Torres and Sablan would drive past the tavern on Sablan's motorcycle and that Evaristo and Perez would drive Torres' car to a 24-hour wake being held in the village of Yigo. The intended alibi was that all four were to be believed to have ridden together to the wake and participated in the religious ceremonies there.

---

* Honorable William M. Byrne, United States Senior District Judge, Central District of California, sitting by designation.

1. It appears that appellant Sablan made the statement in the Chamorro language. At the trial he stated that he must have told Torres and the others, "Let's go up to Carmen's Place", rather than, "Let's shoot up Carmen's Place." The former would have been said as the following: "Nihi paiki ni Carmen's", while the latter translates as "Paiki pas Carmen".

On the evening of the Fourth, Carmen's Place was packed with celebrants. Around 8:30 a speeding, dark-colored motorcycle slowed its deadly journey to allow either the driver or his passenger to fire five gun shots into the crowded building.

Evidence was introduced that Sablan and Torres arrived at the Yigo wake sometime between 8:55 P.M. and 10:30 P.M.[2] In addition testimony was given by a friend of Torres that at the wake Torres gave him a revolver wrapped in a piece of cloth. This gun was later identified as the murder weapon.

Appellant presents a number of arguments in support of the present appeal. None has any merit.

First, he argues that the circumstantial evidence introduced at trial left open "too many other hypotheses" to be sufficient "to sustain the verdict and conviction." For example, he suggests that

"Torres by himself may have committed the crime. An entirely different person on an entirely different motorcycle may have fired the shots. Torres could have taken Sablan's motorcycle and gone back to Carmen's Place by himself or with others."

These are interesting possibilities, but it is immaterial that appellant, his counsel or the members of this Court might draw them as inferences. As we stated in United States v. Manuel-Baca, 421 F. 2d 781 (C.A. 9, 1970), "All that is required is an evidentiary basis for the jury to decide whether, beyond what they believe to be a reasonable doubt, the accused is guilty of the charge."

■ We find that the circumstantial evidence against Sablan was consistent with a reasonable inference of guilt. In this regard, appellant's reliance on Whaley v. United States, 362 F.2d 938, 939 (C.A. 9, 1966) is unwarranted. In Whaley a panel of this Court stated per curiam

"While circumstantial evidence may support a conviction, it must be adequately sufficient to enable a reasonable determination that it excludes *every* hypothesis except that of guilt (citations)." (emphasis supplied)

Today we specifically disapprove of that holding in *Whaley* on the grounds that "* * * so far as the jury's fact-finding function is concerned, all that is to be required of the jury is that it weigh *all* of the evidence, direct or circumstantial, against the standard of reasonable doubt." United States v. Nelson, 419 F.2d 1237, 1241 (C.A. 9 1969). We adhere to the *Nelson* rule that the proper test is not whether the evidence excludes every hypothesis except that of guilt but, rather, "whether the jurors could reasonably arrive at (their) conclusion." *Nelson, supra,* 1243. Clearly, in the instant case there was adequate evidence for the jury to draw its conclusion that Sablan was guilty. Accord, Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■ Next, appellant contends that the Government unfairly prejudiced the jury against him by certain statements in closing argument: (1) "After the shots were fired, David Sablan made a very sharp turn into the Wusstig Road." (2) "They (Torres and Sablan) discussed which vehicle they would use." and (3) "Did they say: 'Yeh, let's go shoot at Carmen's Place, they refused to serve us. I want to put a few holes in the wall. Let's go scare them, show them who is tough."

As to the first two, in view of the trial court's warnings to the jury that arguments of counsel were not evidence, appellant's claim is without merit. As to the third, the prosecutor did not represent his statement as a fact but, instead, asked the jury to weigh and consider previous testimony. Although the second part of the question ("I want to

---

2. Sablan, himself, stated that he arrived at the wake at approximately 8:15 P.M. Two friends of appellant testified that they saw Sablan at the wake at about 8:15 on the night of the murder.

put a few holes * * *") was improper, we hold that the error was not harmful to Sablan because the trial court admonished the prosecutor to "confine your arguments to the evidence". This statement was made in open court and was heard by the jury.

 Furthermore, Sablan urges the view that the prosecutor's remarks about the goals of "law and order" were prejudicial within the general scope of Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1934) and related cases. We disagree. Unlike the present case, the evidence against the defendant in *Berger* was not strong. In those circumstances, the Supreme Court held that "prejudice to the cause of the accused (was) so highly probable" that the Court was not justified "in assuming its non-existence". In addition, the present record contains none of the "pronounced" or "persistent" misconduct the Court found so odious in *Berger*. Compare Chatman v. United States, 411 F.2d 1139 (C.A. 9, 1969). Appellant's discussion of the rest of the prosecutor's remarks is without substance since those remarks were made outside the presence of the jury.

Finally, Sablan states that testimony by a police officer that the appellant admitted in the police headquarters that he had arrived at the wake at 9:30 P.M. was "in the form of heresay (sic)" and could be used only for the purposes of impeaching Sablan's earlier testimony.

It is well established that an out-of-court statement of an accused may be admitted into evidence as an "admission". As such, admissions are not in the class of hearsay statements. Wigmore writes that a party's testimonial utterances made out-of-court "pass the gauntlet (of the Hearsay rule) when they are offered against him as opponent because he, himself, is in that case the only one to invoke the Hearsay rule and because he *does not need to cross-examine himself*". Wigmore on Evidence, § 1048, pg. 3 (emphasis in the original). See also United States v. United Shoe Machinery Corp., 89 F. Supp. 349 (D.C.1950).

We have found no reversible error in the case at bar.

The judgment is affirmed.